This case is an appeal from the granting of summary judgment in favor of defendants *Page 131 
below. The action arose on four counts alleging liability based on (1) negligence, (2) wantonness, (3) presence of attractive nuisance on defendant's premises and (4) presence of a dangerous instrumentality.
The undisputed facts are that plaintiff Gary R. Tolbert, a six-year-old, was shot in the eye by another child with an air rifle which was located in defendants' carport. The moving papers consisted of the pleadings and affidavits of defendants, Bruce and Esther Gulsby. Plaintiffs opposed the motion by submitting two affidavits of Curtis A. Tolbert, Gary's father, and depositions of plaintiff Gary R. Tolbert, Defendant Bruce H. Gulsby, and one Tammy Lynn Chandler. The issue on appeal is whether the trial judge erred in granting the defendants' motion for summary judgment as to each of the four counts.
On appeal from summary judgment, the appellate court looks at the same factors which the court below considered in ruling on the motion. 10 Wright Miller, Federal Practice and Procedure, § 2716, p. 430 (1973). Rule 56 of the Alabama Rules of Civil Procedure states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On a motion for summary judgment all reasonable inferences from the facts are viewed most favorably to the non-moving party and the moving party is required to establish that the other party could not recover under `any discernible circumstances.' Folmar v. MontgomeryFair Company, Inc., 293 Ala. 686, 309 So.2d 818 (1975); seeUnited States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993,8 L.Ed.2d 176 (1962); Rotermund v. United States Steel Corp.,474 F.2d 1139 (8th Cir. 1973); Nyhus v. Travel Management Corp., 151 U.S.App.D.C. 269, 466 F.2d 440 (1972).
The question before the court is this: Is there evidence which, when considered in a light most favorable to the plaintiffs, would support any one of plaintiffs' theories of liability, and, thus, defeat summary judgment.
Under a negligence count, the duty owed by a landowner depends on the status of the injured party in relation to the defendant's land. See Mullins v. Pannell, 289 Ala. 252,266 So.2d 862 (1972); Autrey v. Roebuck Park Baptist Church,285 Ala. 76, 229 So.2d 469 (1969). If the injured party is determined to have been a trespasser, the landowner owes only the duty not to wantonly or intentionally injure him. City ofDothan v. Gulledge, 276 Ala. 433, 163 So.2d 217 (1964); AlabamaGreat Southern Railroad Co. v. Green, 276 Ala. 120,159 So.2d 823 (1964). "Under ordinary conditions trespassing children, or children on the land of another as bare licensees, occupy the same position as trespassing adults." Alabama Great SouthernRailroad Co. v. Green, supra; Mullins v. Pannell, 289 Ala. 252,266 So.2d 862 (1972). If plaintiff is found to have been on defendant's property with his consent or as his guest, but with no business purpose, he attains the status of licensee and is owed the duty not to be willfully or wantonly injured or not to be negligently injured after the landowner has discovered his peril. Autrey v. Roebuck Park Baptist Church, 285 Ala. 76,229 So.2d 469 (1969).
"Wantonness" has been defined by this court as
 "the conscious doing of some act or the omission of some duty under the knowledge of the existing conditions, and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Britton v. Doehring, 286 Ala. 498, 242 So.2d 666; Westbrook v. Gibbs, 285 Ala. 223, 231 So.2d 97; Tucker v. Cox, 282 Ala. 489, 213 So.2d 222; Culpepper Stone Plumbing Heating Co. v. Turner, 276 Ala. 359, 365, 162 So.2d 455. Wantonness may arise *Page 132 
from knowledge that persons, though not seen, are likely to be in a position of danger * * *. Lewis v. Zell, 279 Ala. 33, 181 So.2d 101; Graves v. Wildsmith, 278 Ala. 228, 177 So.2d 448. Wantonness may arise after discovery of actual peril, by conscious failure to use preventive means at hand. Godfrey v. Vinson, 215 Ala. 166, 110 So. 13. Knowledge need not be shown by direct proof but may be shown by adducing facts from which knowledge is a legitimate inference. Britton v. Doehring, supra; Lewis v. Zell, supra." Kilcrease v. Harris, 288 Ala. 245, 251, 259 So.2d 797, 801-02 (1972).
From the record before the court, there is no direct evidence that defendant Bruce Gulsby knew that plaintiff Gary Tolbert was on his property at the time of the injury. Defendant Esther Gulsby acknowledges that she had seen the plaintiff earlier in the day but states that she had no knowledge that the air rifle was propped on the carport. Bruce Gulsby maintains that he does not believe that the air rifle was cocked and, further, that he had propped it against the wall behind a lawn chair with an enclosed back and seat so that it was not in plain view. There is evidence that children frequently played in defendants' yard and that plaintiff Gary Tolbert had been there on other occasions, although there is no evidence that he was present at the time of the injury by either express or implied invitation. Based on the facts before the court, it would appear that he was either a trespasser or a licensee to whom the only duties owed were not to be intentionally or wantonly injured or not to be negligently injured after the defendants had knowledge of his peril. There is no evidence of intentional injury, nor of knowledge on the part of defendants of plaintiff's peril. Thus summary judgment on the negligence count was proper.
Arguably there is a scintilla of evidence of wanton conduct in that at least two witnesses assert that defendant Bruce Gulsby admitted that the air rifle had been left in a cocked position ready for firing. In the case of Kilcrease v. Harris,288 Ala. 245, 259 So.2d 797 (1972), it was held that a wanton count should go to the jury if there is the least particle of evidence to support a finding of wantonness.
Plaintiffs' complaint also contains a count asserting liability based on the attractive nuisance doctrine. This doctrine offers an exception to the limited duty owed by a landowner to a trespasser. It applies only where trespassing children are involved. Alabama Great Southern Railroad Co. v.Green, 276 Ala. 120, 159 So.2d 823 (1964); see, Fulford, TheTort Liability of Possessors of Property to TrespassingChildren in Alabama, 11 Ala.L.Rev. 1, 9-13 (1958). The doctrine evolved form the "turntable" theory pronounced by the United States Supreme Court in Sioux City and P.R. Co. v. Stout, 84 U.S. (17 Wall.) 657, 21 L.Ed. 745 (1873) and was adopted by this court in the case of Alabama Great Southern Railroad Co.v. Crocker, 131 Ala. 584, 31 So. 561 (1901). The turntable doctrine over the years has been narrowly applied and rigorous standards of application have developed around its use. The most important restriction is that the dangerous condition on the landowner's property must be found to be naturally attractive to small children — thus leading to the "attractive nuisance" terminology. According to Gary Tolbert's deposition, he was not attracted to Mr. Gulsby's carport because of the air rifle. Thus it appears that summary judgment was properly granted as to the attractive nuisance count.
The fourth count of plaintiff's complaint charges liability on the theory that Bruce Gulsby was maintaining a dangerous instrumentality on his property. This doctrine is based on a "straight" negligence theory and arguably developed as a reaction to the restrictive use of the attractive nuisance theory. See Fulford, The *Page 133 Tort Liability of Possessors of Property to TrespassingChildren in Alabama, supra. The doctrine is set out in Thompsonv. Alexander City Cotton Mills Co., 190 Ala. 184, 191,67 So. 407, 410 (1914), which quotes Thompson on Negligence, section 1030 (1880):
 "We now come to a class of decisions which hold the landowner liable in damages in the case of children injured by dangerous things suffered to exist unguarded on his premises, where they are accustomed to come with or without license. These decisions proceed on one or the other of two grounds: (1) That, where the owner or occupier of grounds brings, or artificially creates something thereon, which, from its nature, is especially attractive to children, and which, at the same time, is dangerous to them, he is bound, in the exercise of social duty and the ordinary offices of humanity, to take reasonable pains to see that such dangerous things are so guarded that children will not be injured by coming in contact with them. (2) That, although the dangerous thing may not be what is termed an `attractive nuisance' (that is to say, may not have especial attraction for children by reason of their childish instincts), yet where it is so left exposed that they are likely to come in contact with it, and where their coming on contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it, so as to prevent injury to them."
This theory was also discussed by the court in Republic Steelv. Tillery, 261 Ala. 34, 38, 72 So.2d 719, 721 (1954) where the court reaffirmed its "straight" negligence roots:
 "[I]n Sheffield Co. v. Morton, supra [161 Ala. 153, 49 So. 774], it is said: `Every theory of negligence works around to the question whether some one did or failed to do what a reasonably prudent and competent man would be expected to do under given circumstances. In determining what precautions were reasonably necessary and incumbent upon the defendant in the use of its property at the place in question, it must be held to have considered the known extent and nature of the use to which the place was customarily put by others than its owner.' Mosely v. Alabama Power Co., supra, 246 Ala. 416, 21 So.2d 305; Golson v. W.F. Covington Mfg. Co., supra, 205 Ala. 226, 87 So. 439; 18 Am.Jur. 467-468; 17 A.L.R. 853. This duty exists whether an injured child should be classified as a licensee or an invitee, or sometimes even a trespasser, if defendant should have anticipated the injury. 18 Am.Jur. 467, notes 1, 2 and 3."
Under this doctrine the standard is one of reasonableness: should defendant have reasonably anticipated that injury would result from the condition he created on his property? This Alabama doctrine is very similar to the statement of landowner liability to trespassing children in Restatement of Torts 2d, section 339 (1965) which reads:
 "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
 "(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
 "(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
 "(c) the children because of their youth do not discover the condition or *Page 134 
realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
 "(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
 "(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."
For treatment of this section, see 62 Am.Jur.2d, Premise Liability, §§ 139-145 (1972); Annot., 16 A.L.R.3d 25 (1967); and Prosser, Trespassing Children, 47 Cal.L.Rev. 427 (1959).
The following excerpt from Fulford's law review article, 11 Alabama Law Review at 15-19, further explains this doctrine:
 "The rule on which the straight negligence cases have proceeded is this: If a landholder creates or maintains upon his premises, where he can reasonably foresee the presence of children, a dangerous situation under circumstances which he should reasonably anticipate will likely or probably cause bodily harm to them, he is liable in damages to one proximately injured by such situation whether the child is an invitee, a licensee, or a trespasser.
 "In such cases, the duty to exercise reasonable care rests upon the broad and fundamental principle that one who employs and uses a dangerous and deadly agency must exercise such care as is necessary to protect those who may reasonably be expected, through ignorance of the danger, to come into its close proximity. It is the apparent probability of danger from the inherently dangerous character of the instrumentality installed on private premises, rather than the owner's right to exclusive possession thereof, that creates and determines both the duty and measure of care required of the owner. The duty of reasonable care is owed by the landholder to invitees, licensees and trespassers alike if their presence in the area of danger should reasonably have been anticipated by him.
 "The element of attraction in such cases is important only insofar as it indicates that the trespass should have been anticipated, it being unnecessary that the dangerous instrumentality have any special lure to children if it is left so exposed that the defendant reasonably should have foreseen that bodily harm was likely to occur from its exposure. Evidence that children other than the plaintiff customarily played at the place or with the dangerous instrumentality has been said to be necessary to establish liability only where the place or appliance does not possess a quality calculated to attract children generally; however, the duty to exercise reasonable care is emphasized where notice or knowledge of the customary presence of children about such danger is possessed by the proprietor.
 "The defendant must be held to have considered the known extent and nature of the use to which the place was customarily put by others than its owner, and where the location of the dangerous agency is frequented by children, it may be inferred that their presence was known to the defendant.
 "A proprietor has the duty to inspect his premises to become sufficiently advised to meet the demand of his duty toward those who it is reasonable to expect will enter his premises. It is no defense that he constructed and maintained the dangerous instrumentality in the same manner as others constructing and maintaining other such well-regulated instrumentalities.
 "Liability depends in part upon the probability of danger taken in connection with the instrumentality's usefulness in defendant's business. The rule does not *Page 135 
prevent the owner from using and excluding others from the use of his property.
 "The natural propensities of childhood must be taken into consideration by the defendant in such cases, but there is no hard and fast rule of liability dependent upon plaintiff's age. A plaintiff fourteen years of age or older will not, on the basis of age alone, be precluded from recovery in a proper case.
 "Each case must be decided on its own facts. `It would be difficult to lay down a precise standard of duty owing to such a person in respect to the use of the defendant's property by one for his own pleasure, whether he was in the attitude of an invitee, a licensee or a trespasser.' All of the circumstances must be taken into account in determining whether the defendant did or failed to do what a reasonably prudent man would be expected to do under such circumstances, and his liability will be determined accordingly.
 "Where straight negligence principles have been applied, the hurt child has fared better than in the attractive nuisance cases. Besides the railroad turntable case, the child has received favorable consideration in cases where harm was caused by dynamite caps, skittish mules driven by defendant's agent, and a pit of scalding water. Another case involving hot water resulted in a jury verdict for the defendant, but the case was held to have been tried properly on straight negligence principles." [Footnotes numbers and footnotes omitted]
This court has previously noted the similarity between Alabama cases using the straight negligence doctrine in relationship to trespassing children and Section 339, Restatement of Torts 2d; however, for clarity and certainty's sake now and in the future, this court adopts Section 339, Restatement of Torts 2d, as controlling, regardless of whether the children are licensees or trespassers.
Based on the pleadings, affidavits and depositions in the case before this court, there is evidence from which a jury could conclude that defendant Bruce Gulsby knew young children played on his premises regularly and left a loaded air rifle propped against his carport wall. There is a dispute as to whether the air rifle was cocked and ready for firing. Reasonable minds could reasonably differ as to whether the air rifle constituted an obviously dangerous condition with which children were likely to come into contact and, further, whether defendant should reasonably have anticipated the injury and taken steps to guard against it. Thus it appears that summary judgment was erroneously granted as to the "dangerous instrumentality" count.
As a final argument the Gulsbys contend that summary judgment was proper because Bruce Gulsby's action of leaving the air rifle on the carport was not the proximate cause of plaintiff's injury. Their argument is that the action of the young girl who actually shot Gary Tolbert with the air rifle was the proximate and moving cause and was an intervening agency relieving Gulsby of any liability.
The concepts of proximate cause and sufficient intervening cause were discussed by this court in the case of LibertyNational Life Insurance Co. v. Weldon, 267 Ala. 171, 186-87,100 So.2d 696, 709 (1958), where it was stated:
 "Persons who perpetrate torts are, as a rule, responsible and only responsible for the proximate consequences of the wrongs they commit. In other words, unless the tort be the proximate cause of the injury complained of, there is no legal accountability * * *
 "* * * The many decisions of this court dealing with negligence as the proximate cause, when some agency has intervened and has been the immediate cause of the injury, hold the party guilty of negligence in the first instance is not responsible, unless at the time of the *Page 136 
original negligence the act of the agency could have been reasonably foreseen. If the act of the intervening agency could have been reasonably foreseen the causal chain is not broken. But if the injury results from an independent, intervening, efficient cause, not reasonably to be anticipated, to wit, the act of a third person, the negligence shown, if any, is not the proximate cause of the injury. Clendenon v. Yarbrough, 233 Ala. 269, 171 So. 277; Louisville N.R. Co. v. Maddox, 236 Ala. 594, 183 So. 849, 118 A.L.R. 1318; Louisville N.R. Co. v. Courson, 234 Ala. 273, 174 So. 474, and cases cited; Mahone v. Birmingham Electric Co., 261 Ala. 132, 73 So.2d 378. That is the rule laid down by this and other courts with some slight variance in the language by which the thought is expressed, such as that the intervening event must be the `natural and reasonable' or `ordinary and natural' result of the initial negligence."
This court finds that the question of whether the girl's action was an unforeseeable one, not reasonably to be anticipated when defendant put the air rifle on the carport, is a question about which reasonable people could differ, thus requiring a jury determination.
Because of the nature of negligence actions, with their questions of reasonableness and proximate causation, summary judgment will not ordinarily be properly granted in such cases. In the case before this court, though, the motion was properly granted as to the negligence and attractive nuisance counts. It was not properly granted as to the wanton count. Finally, there is evidence to support the "dangerous instrumentality" count; thus reversal of the trial court's action in granting summary judgment as to this count is in order.
AFFIRMED IN PART, REVERSED IN PART, REMANDED.
MERRILL, MADDOX, JONES and SHORES, JJ., concur.