341 So.2d 139 (1976)
Brett WEATHERBY, who sues by and through his father and next friend, Michael E. Weatherby
v.
Larry B. MEREDITH and Kaye C. Meredith.
SC 1976.
Supreme Court of Alabama.
December 30, 1976.
Frank O. Burge, Jr., and Van Gamble, Birmingham, for appellant.
Duncan Y. Manley, of Rives, Peterson, Pettus, Conway, Elliott & Small, Birmingham, for appellees.
MADDOX, Justice.
Plaintiff, Brett Weatherby, almost three years old at the time of his accident, broke his leg while playing on a swing-set in defendant's backyard. The trial court, after considering the pleadings, depositions and other evidence, granted the defendant's motion for summary judgment.
The facts, briefly, are as follows: On April 11, 1974, young Brett went with his mother and sister to his aunt's house. Plaintiff's aunt, Barbara Thompson, lived next door to the Merediths (the defendants). Someone at the Thompson residence called defendant Kaye Meredith and they decided to play cards at the Merediths' house. Upon their arrival at the Merediths, Margaret Weatherby, Barbara Thompson and Donis Reed began playing cards with Kaye Meredith at the dining room table. Young Brett, his sister, Michelle, Tracy Reed and defendants' two children, Brian and Christy, went out into the backyard to play.
At the time of the accident, plaintiff, his sister, Michelle, Tracy Reed and Brian Meredith, were in the backyard. Michelle was six years of age and the oldest child playing in the backyard. From where the adults were seated in the house, they could not see the children playing in the yard at the time of the accident. The adults were first alerted of plaintiff's accident when they heard crying. Shortly thereafter, Michelle came to the door to inform her mother that Brett had been hurt. In her deposition testimony, Michelle stated that at the time of the accident, she and Tracy Reed were on the glider swing-set and that it was going fast. Plaintiff placed his foot on the floor *140 of the glider while it was still going, but she did not know what caused him to get hurt.
Plaintiff, who was four years of age at the time he was deposed, testified that he did not remember how he was hurt. Both Margaret Weatherby and Barbara Thompson testified; however, their testimony as to how the accident occurred is based solely on an account of the accident as related to them by the children. Mrs. Weatherby testified that Michelle told her that Brett got his leg caught under the glider portion of the swing as he tried to get on and that the children could not stop the swing.
Young Brett claims that the Merediths were negligent in placing the legs of the swing-set too deep in the ground, thereby causing the swing floor (place where a person's feet would rest while seated in the glider swing) to be so close to the ground that it actually dug out a hole in the ground under it.
One of the deponents testified that she heard two or three different tales as to how the accident occurred: (1) plaintiff was pushing the swing when he got hurt; (2) Michelle and plaintiff had a fight; and (3) the swing hit plaintiff while he was trying to get on. The record shows that plaintiff and the other children had used the swing set on other occasions and there was testimony that no other children had been hurt.
On appeal, plaintiff urges that summary judgment was inappropriate because he could have amended his complaint to allege a cause of action under the so-called "dangerous instrumentality doctrine," set out in Section 339, Restatement of Torts 2d (1965) and adopted in Tolbert v. Gulsby, Ala., 333 So.2d 129 (1976).
Section 339 sets forth five conditions all of which must be met to fall within the dangerous instrumentality doctrine. Section 339(b) requires that the condition upon the landowner's premises be one which:
". . . the possessor knows or has reason to know and which he realizes will involve an unreasonable risk of death or serious bodily harm to such children." (Emphasis added.)
The swing-set in question consisted of a platform swing, two ordinary swings, a glider, and a slide. This Court judicially knows that swing-sets of this type are commonly used.
Under plaintiff's theory of liability, the question presented is whether the defendants should have reasonably anticipated that an unreasonable risk of death or serious bodily harm would result from the condition of maintaining a swing-set on their property in the manner shown. Reasonable minds may differ as to whether an air rifle that may have been cocked and ready for firing constituted an obviously dangerous condition with which children were likely to come into contact, as was the case in Tolbert. In this case, however, when we consider whether defendants should have reasonably anticipated the injury and taken steps to guard against it, we find from the evidence presented that the swing-set in question could not be considered a dangerous instrumentality. We recognize that normally the question of whether an instrumentality is dangerous is for the jury. Here, however, the depositions, along with the diagram of the glider and the photograph of the swing-set, do not show a dangerous condition. In effect, there are no allegations or evidence to support plaintiff's theory of liability.
Having considered the pleadings, depositions, exhibits, briefs, and arguments of counsel in a light most favorable to the plaintiff, we are of the opinion that the trial court's action in granting defendants' motion for summary judgment was not erroneous.
AFFIRMED.
HEFLIN, C. J., and BLOODWORTH, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
FAULKNER and JONES, JJ., dissent.
JONES, Justice (dissenting):
I respectfully dissent and express my disapproval of a continuation by this Court to permit property law influence to dominate the law of tort liability.
*141 I am opposed to further perpetuation of the social guest/business invitee distinction. Here, the majority opinion looks to the "dangerous instrumentality" exception of Tolbert; finds, as a matter of law, that the playground swing does not constitute a dangerous instrumentality; and affirms the trial Court's grant of summary judgment for want of legal duty absent a willful or wanton injury.
I have no quarrel with the finding that the swing, as a matter of law, is not a dangerous instrumentality. The playground swing, here, and the loaded air rifle, in Tolbert, are materially different; but "dangerous instrumentality" does not equate the "reasonably foreseeable risk of harm" negligence theory on which plaintiff's claim is based. See Harvard v. Palmer & Baker Engineers, Inc., 293 Ala. 301, 302 So.2d 228 (1974). To resort to the "dangerous instrumentality" exception is to acknowledge the social guest or licensee test of liability, i. e., willful or wanton injury. How can a two-year-old child be a social guest? Does not this status necessarily imply a voluntary will or consent?
Beyond these two questions, however, lies the more basic problem: Can society continue to tolerate the artificial distinctionbased on the priority of property over personal rightsbetween invitees and licensees? (I should be careful to note, however, that I do not favor the abolition of the invitee/trespasser distinction.)
The invitee/licensee distinction produces this strange and illogical anomaly. Two guests slip and fall on the same throw rug in the slick tile entrance hall of a private home. One is a friend who was invited to dinner; the other is the pest control service man making his regular but unscheduled monthly inspection. The former is denied recovery; the latter is allowed recovery. WHY?