This is an appeal from a judgment for defendants in a personal injury action. *Page 573 
Lisa Kennedy, seven years old at the time of the accident, injured her arm while playing in the back yard of the residence owned by Mr. and Mrs. Robert Graham. Lisa, through her parents as next friends, brought this action against the Grahams. During the jury trial of this cause, the trial court suggested that Code 1975, § 35-15-1 et seq., might apply to the case and, after arguments, determined that it did and therefore directed a verdict on the negligence counts. The jury returned a verdict for the Grahams on the wantonness counts, and the trial court entered judgment thereon. The primary issues in this case relate to the duty of care owed by a landowner to a licensee.
Lisa Kennedy was injured when she climbed onto the roof of the Grahams' house with the intention of jumping off onto a trampoline in the Grahams' back yard. Lisa tripped on two nails that Mr. Graham had placed on the edge of the roof to hold the garden hose so it would spray on the trampoline. She fell onto the trampoline and broke her arm. The Grahams' daughter Holly was on the roof with Lisa, and their son Robby had been on the roof with his friend Bobby McKissick shortly before the girls went up. Several other neighborhood children were in the Grahams' yard playing on the trampoline. Mr. Graham was at home the whole day, and the accident occurred shortly after Mrs. Graham arrived home from work. Mrs. Graham heard footsteps on the roof and went to the back door, but by the time she got to the door some of the children were already there saying Lisa had fallen.
There was evidence that Mr. Graham had discovered his son Robby and perhaps Bobby McKissick on the roof on a previous occasion, at which time he had reprimanded them. There was also evidence that he had previously put Robby onto the roof and supervised him in placing the garden hose to spray downward and keep the children cool. There was no evidence, however, that he had allowed the children to play on the roof or that he knew that any of them had been on the roof on the day of the accident. The Kennedys argue that Mr. Graham should have heard Robby and Bobby when they were on the roof before the girls were. There was no evidence that he did hear them, however.
The evidence tended to show that the Grahams had required notes from the parents of children in the neighborhood stating that the children had permission to play on the trampoline, but that they had not obtained such a note from the Kennedys because the Kennedys had moved into the neighborhood only several weeks prior to the accident. Mr. and Mrs. Kennedy had told their children not to play on trampolines, but there was no evidence that the Grahams knew of this admonition or that the Kennedys knew about the trampoline at the Grahams' house.
The Kennedys' complaint alleged that the Grahams maintained an attractive nuisance on their premises, and that they
 "negligently maintained their premises . . . in an unreasonably unsafe condition in that they erected and caused to be maintained a trampoline on their property in close proximity to the house located thereon. Defendants' house had an aerial or antenna affixed thereto which made it possible for children of tender and undiscerning years to climb onto said house and jump down onto said trampoline. Plaintiffs aver that Defendants were aware, or in the exercise of due diligence should have been aware of the existence of such attractive nuisance and the fact that children were in the habit of climbing [onto] the roof of their house and jumping therefrom onto said trampoline."
The general principles governing liability of landowners were summarized in Tolbert v. Gulsby, 333 So.2d 129 (Ala. 1976). Pertinent portions of that opinion are as follows:
 "Under a negligence count, the duty owed by a landowner depends on the status of the injured party in relation to the defendant's land. . . . If the injured party is determined to have been a trespasser, the landowner owes only the duty not to wantonly or intentionally injure him. . . . 'Under ordinary conditions trespassing children, or children on the land of another as bare licensees, occupy *Page 574 
the same position as trespassing adults.'. . . If plaintiff is found to have been on defendant's property with his consent or as his guest, but with no business purpose, he attains the status of licensee and is owed the duty not to be willfully or wantonly injured or not to be negligently injured after the landowner has discovered his peril."
Id., at 131 (emphasis added; citations omitted). See also Motesv. Matthews, 497 So.2d 1121 (Ala. 1986). The gist of the Kennedys' argument is that the trial court erred in directing a verdict on the negligence counts of the complaint because, they say, the facts would support submission of those counts to the jury under the theory of negligently injuring after discovery of peril.
The Court in Tolbert adopted the Restatement (Second) ofTorts § 339 (1965), as the standard to be applied, "regardless of whether the children are licensees or trespassers." Tolbert,supra, at 135. The Restatement section was quoted thusly:
 "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
 "(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
 "(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
 "(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
 "(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
 "(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."
Tolbert, supra, at 133-34. The Court in Tolbert reversed a summary judgment, with the following conclusion:
 "Reasonable minds could reasonably differ as to whether the air rifle constituted an obviously dangerous condition with which children were likely to come into contact and, further, whether defendant should reasonably have anticipated the injury and taken steps to guard against it."
Id., at 135. The count at issue in Tolbert proceeded on the theory of "dangerous instrumentality," but the Court stated that "[t]his doctrine is based on a 'straight' negligence theory." Id., at 132. The Kennedys' complaint at least arguably raises this issue, especially since the adopted Restatement
standard makes no reference to the catchwords "dangerous instrumentality," but speaks only of artificial conditions involving an unreasonable risk and the duty of care attendant thereto. The trampoline, however, cannot be said to create an unreasonable risk of injury of which the children were unaware. In Weatherby v. Meredith, 341 So.2d 139 (Ala. 1976), this Court held that a swing set is not a dangerous instrumentality.
In any event, the trial court dispensed with any negligence claims when it directed a verdict on those claims based on Code 1975, § 35-15-1 et seq. Chapter 15 of Title 35 is entitled "Duty of Care Owed Persons on Premises for Sporting or Recreational Purposes." The entire chapter, prior to the addition of Article 2 (see below), read:
 " § 35-15-1. No duty owed except as provided in § 35-15-3.
 "An owner, lessee or occupant of premises owes no duty of care to keep such premises safe for entry and use by others for hunting, fishing, trapping, camping, water sports, hiking, boating, sight-seeing or other recreational purposes or to give any warning of hazardous conditions, use of structures or activities[1] on such premises to persons entering for the above-stated purposes, except as provided in section 35-15-3. *Page 575 
 " § 35-15-2. Effect of permission to use premises.
 "An owner, lessee or occupant of premises who gives permission to another to hunt, fish, trap, camp, hike, sightsee or engage in other sporting or recreational activities upon such premises does not thereby extend any assurance that the premises are safe for such purpose, constitute the person to whom permission has been granted the legal status of an invitee to whom a duty of care is owed[,] or assume responsibility for or incur liability for any injury to person or property caused by an act of such person to whom permission has been granted, except as provided in section 35-15-4 [sic — should be 35-15-3, according to original enactment].
 " § 35-15-3. Otherwise existing liability not limited.
 This chapter does not limit the liability which otherwise exists for wilful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or for injury suffered in any case where permission to hunt, fish, trap, camp, hike or sight-see was granted for commercial enterprise for profit; or for injury caused by acts of persons to whom permission to hunt, fish, trap, camp, hike or sight-see was granted to third persons as to whom the person granting permission, or the owner, lessee or occupant of the premises owed a duty to keep the premises safe or to warn of danger.
 " § 35-15-4. General duty of care or ground of liability not created.
 "Nothing in this chapter creates a duty of care or ground of liability for injury to person or property.
 "35-15-5. Right to go on lands of another without permission not created.
 "Nothing in this chapter shall be construed as granting or creating a right for any person to go on the lands of another without permission of the landowner."
The Kennedys' position was and is that this chapter applies only to large open tracts. The trial court responded that the above-quoted provisions appeared to govern premises liability generally and therefore appeared to apply to the instant case. Beyond this dispute as to whether chapter 15 applies to the instant case, the Grahams argue that the trial court's application of these Code sections was harmless error, even if incorrect, because they were entitled to a directed verdict on the negligence counts even under the otherwise-existing standard of care.
Because we agree with the latter point, we decline to rule on whether the above-quoted Code provisions apply to situations such as this, i.e., the use of small residential lots for recreational purposes. We do make two observations in passing, however. One, we can see a difference in principle between large uninhabited tracts of land and small residential lots, a difference that would support a decision to limit liability for negligence in the first case but not in the second. There are sound reasons for not requiring an owner of a large tract to correct all dangerous conditions after he discovers them but still imposing liability on a homeowner who fails to correct dangerous conditions around his house after becoming aware of them.
Second, we note that the above-quoted provisions are now Article 1 of Chapter 15 and that the legislature has enacted similar provisions that are now codified as Article 2 of Chapter 15. Article 2 clearly does not apply to the instant case, because it speaks of "public recreational use," §35-15-22, and recreational land open "to the general public," §35-15-28. We see no reason why Article 2 should limit the application of Article 1, however, and on its face Article 1 is at least arguably susceptible to the interpretation placed upon it by the trial court. Nevertheless, we reserve the question of whether Article 1 could apply to facts such as those in the case at bar, because we find that there was not a scintilla of evidence of negligent injury after discovery of peril. *Page 576 
There was no evidence that Mr. Graham ever allowed children to play on the roof. There was some evidence that he had discovered his son and Bobby McKissick on the roof one time, but that same evidence showed that he reprimanded the boys at the time. There was no other evidence of his ever knowing of any neighborhood children on the roof. The evidence that he may have supervised his son in placing the hose on the roof one time does not tend to show that he knew other children were endangered. The speculation that he may have heard his son and Bobby on the roof earlier in the day is not supported by any direct evidence and is not a sufficient basis for submitting the negligence claims to the jury. Perdue v. Gates,403 So.2d 165 (Ala. 1981). Finally, we note that the evidence showed that as soon as Mrs. Graham became aware that there were children on the roof, she set out to protect them, but that the accident happened too quickly for her to prevent it.
Because the evidence would not support a finding of negligence, the trial court did not err in directing a verdict on the negligence claims. Therefore, the judgment is affirmed.
AFFIRMED.
MADDOX, BEATTY and ADAMS, JJ., concur.
HOUSTON, J., concurs in the result.
[1] The wording of § 35-15-3 ("failure to guard or warn against a dangerous condition, use, structure or activity") suggests that in § 35-15-1 the phase "or to give any warning of hazardous conditions, use of structures or activities" should perhaps have read "or to give any warning of hazardous conditions, use, structures, or activities." We need not attempt to resolve the apparent inconsistency between these two sections.