Christopher Slaughter was injured when he fell from the bed of a pick-up truck owned by J.R. Moncrief and Susan Moncrief. Slaughter was four years old at the time of the accident. The truck was located on the Moncriefs' property and was parked on a steep cement driveway with the back of the bed downhill. Slaughter's mother, Rachel M. Foster, testified that her son was playing outside their apartment and walked to the Moncriefs' home to play with their two daughters, Beverly and Amanda, ages eight and seven, respectively. Slaughter, Beverly, and Amanda climbed into the back of the truck and started playing with rocks as if they were baking cakes. Neither Foster nor Mr. or Mrs. Moncrief was watching the children at the time of the accident. Neither Mr. Moncrief nor Mrs. Moncrief was aware that the children were playing in the truck, nor were they aware that Slaughter was in their yard.
Mr. Moncrief testified that he normally parked the truck facing the garage with the back of the truck downhill. He described his driveway as fairly steep. He testified that other children from time to time play in his yard with his children. He also testified that he knew that his children had played in the truck bed one time, and that that one time was under his supervision, and that the truck was parked in the same manner then as it was at the time of Slaughter's accident. He admitted that playing in the back of the truck without supervision posed a danger to children. He testified that he had no objection if neighborhood children played with his children in his yard. He also testified that young children would probably not understand the risk of falling from the back of the truck.
Mrs. Moncrief testified that Slaughter had played with her children before, but that they usually played in a shaded empty lot across the street, and rarely played in her yard. She also testified that one of her daughters and another child had *Page 1104 
played in the back of the truck once while she supervised them. She testified that she had told her children that they were not allowed to play in the back of the truck.
Slaughter, through his mother, sued the Moncriefs, alleging negligence and wantonness. The trial court entered a summary judgment for the Moncriefs. Slaughter appealed to the supreme court, which transferred the case to this court pursuant to Ala. Code 1975, § 12-2-7(6).
A motion for summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. See West v. Founders Life Assurance Co. of Florida,547 So.2d 870 (Ala. 1989), and Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala. 1989), for a discussion of the application of the substantial-evidence rule in the summary-judgment context.
Slaughter argues that issues of fact exist and preclude a summary judgment. Slaughter premises the Moncriefs' liability on Restatement (Second) of Torts § 339 (1965), which the Supreme Court adopted in Tolbert v. Gulsby, 333 So.2d 129 (Ala. 1976). The Tolbert court noted that the common-law attractive-nuisance doctrine applied only to trespassing children, but it adopted as Alabama law the principles of § 339 and applied them to children without regard to their status as licensees or as trespassers. Id. at 135.
Section 339, entitled "Artificial Conditions Highly Dangerous to Trespassing Children," states:
 "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
 "(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
 "(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
 "(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
 "(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
 "(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."
In Motes v. Matthews, 497 So.2d 1121, 1121-22 (Ala. 1986), the supreme court explained the law relating to § 339, as follows:
 "Our law provides that an occupier of land owes to trespassers only the duty not to willfully or wantonly injure them (Lovell v. Southern Ry. Co., 257 Ala. 561, 59 So.2d 807
(1952)), or put traps or pitfalls in their way (Gandy v. Copeland, 204 Ala. 366, 86 So. 3
(1920)), to warn them of danger actually known by the occupier to exist on the premises after he has knowledge of their presence (Golson v. W.F. Covington Mfg. Co., 205 Ala. 226, 87 So. 439 (1920)), and to use due care after discovering their peril (Birmingham Ice Cold Storage Co. v. Alley, 247 Ala. 503, 25 So.2d 37 (1945)). This duty is hereinafter referred to as the `conventional duty.'
 "A trespasser, for purposes of civil liability, can be, among others, (1) a felon who enters the land for the express purpose of doing physical harm to the occupier or to the occupier's property, or (2) a curious or adventuresome child who enters the property intending no harm to anyone, or anything, but merely to gratify his childish curiosity and childish sense of play. The duty which we have imposed upon occupiers of land under the conventional theory *Page 1105 
 may be too heavy when applied in the case of criminal trespassers. That question is not before us.
 "Our humanitarianism and our instinctive beliefs that adults have an obligation to protect and nurture the community's children have caused us at times to ameliorate the harshness of the rule regarding an occupier's conventional duty to a trespasser, when the trespasser is a child, and thereby to give primacy to child safety rather than to unrestricted property rights.
 "R. Clifford Fulford, Esq., in his scholarly and highly entertaining article, The Tort Liability of Possessors of Property to Trespassing Children in Alabama, 11 Ala.L.Rev. 1 (1958), traces this State's rebellion from the harshness of the application of the occupier's conventional duty to trespassing children through the turntable cases, to the attractive nuisance cases, to the court-imposed limitations on the attractive nuisance cases (which virtually reinstated the conventional duty), and finally to a return to the straight negligence approach of the turntable cases. Mr. Fulford summarizes 34 cases decided by Alabama appellate courts between 1892 and 1958. His research reveals that the theories applied by those courts varied on a case to case basis among the following: conventional duty, attractive nuisance doctrine, and straight negligence. In reference to the indiscriminate choice of a theory or theories to fit a particular case, Mr. Fulford wrote: `In this respect, the Alabama appellate courts have been not unlike the young lady who, having accepted her first proposal, puts off the marriage to see whether there is a better prospect but is afraid to cancel the engagement because her first choice might, after all, be the best.' 11 Ala.L.Rev. at 9. In the 28 years since Mr. Fulford's article, we have made `the bride-to-be' a virtual Miss Haversham, for we still have no uniformity in our approach to a case such as the one now before us, which involves a trespassing child. In some cases we have applied the conventional duty. Alabama Great Southern R. Co. v. Green, 276 Ala. 120, 159 So.2d 823 (1964); Earnest v. Regent Pool, Inc., 288 Ala. 63, 257 So.2d 313 (1972). In other cases we have applied the attractive nuisance doctrine. City of Dothan v. Gulledge, 276 Ala. 433, 163 So.2d 217 (1964). In some cases we have acted as if both of those theories governed the occupier's duty to trespassing children. See Mullins v. Pannell, 289 Ala. 252, 266 So.2d 862 (1972).
 "Chief Justice Heflin, writing for the Court, in Tolbert , (where the owner of property left a loaded air rifle in his carport, which was frequented by children), `for clarity and certainty's sake now and in the future,' adopted § 339, Restatement (Second) of Torts (1965) (straight negligence), as controlling, regardless of whether the children are licensees or trespassers. However, we have continued to apply the conventional theory, see Foster v. Alabama Power Co., 395 So.2d 27 (Ala. 1981), as well as the attractive nuisance doctrine, see Massey v. Wright, 447 So.2d 169 (Ala. 1984). This has created confusion among the bench and bar.
 "The attractive nuisance doctrine is not applicable in cases where one seeks to impose liability upon an occupier of property for the death of or injury to a trespassing child. Likewise, the conventional duty is not applicable in such cases, except where physical harm to a trespassing child is caused by a natural condition upon the property. When physical harm to a trespassing child is caused by a natural condition upon the property, the conventional duty which an occupier owes to a trespasser is the only duty owed to the trespassing child. In all other cases, the duty which an occupier of property owes to a trespassing child is set forth in § 339."
If Slaughter presented substantial evidence of each of the five criteria ((a)-(e)) in *Page 1106 
§ 339, quoted above, then the trial court erred by entering the summary judgment for the Moncriefs. As Justice Houston explained in Motes above, the standard to apply to determine liability in a case where a child is injured by an artificial condition (here, a pickup truck parked on a steep driveway) is § 339.
We conclude that Slaughter did not present substantial evidence of criterion (a) of § 339 — the Moncriefs' actual or constructive knowledge that children are likely to play in the truck. As stated above, both Mr. and Mrs. Moncrief testified that each had allowed their children to play in the back of the truck, although only with their supervision. Mrs. Moncrief testified that she had once allowed a neighborhood child, other than Slaughter, and one of her children to play in the truck, with her supervision. Mrs. Moncrief testified that neighborhood children occasionally came to the door to ask for her daughters to play and that the children nearly always played on a shaded empty lot across the street. Foster testified that her son had played with the Moncrief children before, but she did not testify that her son had played in the truck on prior occasions. We conclude that this evidence is not "substantial evidence" indicating that the Moncriefs had actual or constructive knowledge that children, such as Slaughter, were likely to enter their property to play on the truck.
The supreme court has concluded that an issue of fact as to criterion (a) existed in the following cases: Ricketts v. Norfolk Southern Ry., 686 So.2d 1100 (Ala. 1996) (reversing a summary judgment for the railroad in an action to recover for injuries sustained by a teenager who drove an all-terrain vehicle off a railroad trestle; the local police had warned the railroad that trespassers had been accessing the trestle through various trails leading to the trestle); Fletcher v. Hale, 548 So.2d 135
(Ala. 1989) (reversing a summary judgment for the owner of an apartment complex, in an action to recover for the drowning death of a 10-year-old child; the mother presented evidence that the apartment manager knew that several nontenant children, such as the victim, were using the pool, that the pool water was so cloudy that one could not see the bottom of the pool, that at the time of the accident the pool was used at over-capacity, and that the children using the pool were violating several safety guidelines); Motes, supra (reversing a summary judgment for landowners in an action to recover for the death of a 12-year-old boy; the landowners excavated land to sell as fill dirt, leaving mounds of earth, which caved in on the child and caused his death; the landowners, with knowledge that children frequently came onto the land to play, did not fence in the excavation area, post no-trespassing signs or any other warnings, or reduce the danger of a cave-in.).
The supreme court concluded that no issue of fact existed as to criterion (a) in Kennedy v. Graham, 516 So.2d 572 (Ala. 1987) (affirming a summary judgment for homeowners in an action to recover injuries sustained by a seven-year-old girl who jumped from the roof to a trampoline, because the plaintiff presented no evidence indicating that the homeowners had had knowledge or reason to know that children were routinely jumping from the roof to the trampoline and the evidence indicated that once one homeowner realized there were children on the roof, she attempted to stop them, but was too late).
This case is like Kennedy, in that the Moncriefs had no prior warnings that unsupervised children were playing in their truck. Also, the dangers posed by the Moncriefs' parked truck are not nearly as obvious as the dangers posed by the railroad trestle in Ricketts, the apartment swimming pool in Fletcher, and the excavation mounds in Motes. Arguably, the trampoline situated near the roof in Kennedy is clearly more dangerous than a truck parked in a driveway. Furthermore, just as the property owners in Kennedy had no knowledge or no reason to know *Page 1107 
that children would jump from their roof to the trampoline, the evidence indicates that the Moncriefs did not know or have reason to know that children were playing unsupervised in their truck.
The trial court properly entered the summary judgment for the Moncriefs.
AFFIRMED.
Yates and Thompson, JJ., concur.
Robertson, P.J., and Monroe, J., concur in the result.