This is an appeal from a summary judgment entered in favor of the defendants, Roger Downs Insurance Agency, Roger Downs, and Ray Kirkley. The plaintiffs, Cassie Marie Raney, a minor, and her parents, Ronald and Nancy Raney, sued the defendants on two counts: first, for alleged negligence and wantonness in causing or allowing Cassie to be injured while an invitee on their premises; and, second, in allowing a dangerous instrumentality within their control to injure her while she was a licensee on their premises.
The defendants operate an insurance agency in Tuscaloosa. They hired Nancy Raney to clean their offices on the weekends, while the offices were closed. Without the defendants' knowledge, Nancy often took her two small children along with her when she cleaned the offices. It was an injury to one of these children, Cassie, which occurred while Nancy was cleaning the offices, that precipitated this suit.
While using the bathroom in the offices, Cassie found an open container of white granular powder with a spoon sticking out of it on the bottom shelf of the bathroom. She mistook the substance for sugar, and put a spoonful in her mouth. The substance was in fact lye, and it caused painful burns to her mouth. She and her parents subsequently sued the defendants for punitive as well as compensatory damages.
The only issue presented is whether the trial court erred in granting summary judgment in favor of the defendants. In deciding whether there was a genuine issue of any material fact that would require submission of the case to a jury, we must examine the duty, if any, owed by the defendants to the minor plaintiff, and the applicability of the doctrine of dangerous instrumentality to these facts.
It is clear that Nancy Raney was an invitee upon the premises of Roger Downs Insurance Agency. She was on the premises at the request of Roger Downs and Ray Kirkley in order to perform a helpful or necessary service, the performance of which she had contracted to do. See, generally, 65 C.J.S. Negligence
§ 63(41)-(56) *Page 1386 
(1966); 62 Am.Jur.2d Premises Liability §§ 39-50 (1972).
The novel question presented for our determination is whether Cassie Raney obtained the status of an invitee by being on the premises with her mother. The duty of care owed to invitees is greater than that owed to mere licensees or trespassers. See,First National Bank of Mobile v. Ambrose, 270 Ala. 371, 119 So.2d 18 (1960); Kittrell v. Alabama PowerCo., 258 Ala. 381, 63 So.2d 363 (1953); Great Atlantic Pacific Tea Co. v. Keltner, 29 Ala. App. 5, 191 So. 633,cert. den., 238 Ala. 462, 191 So. 640 (1939).
The Raneys argue that because Cassie sometimes assisted her mother in cleaning the offices, she, too, was an invitee. In support of this proposition they cite a Georgia decision:
 "Plaintiff contends that she was on the premises as an invitee, arguing that her being at the nursing home on the day of her injury was of some economic benefit to the corporation. Plaintiff contends that patients enjoyed talking and visiting with her and this enured economic benefit to the nursing home. Furthermore, the plaintiff argues that, had she not gone to the nursing home with her mother, her mother would have missed work and therefore her presence at the nursing home bestowed an economic benefit. Also, we note that according to plaintiff's testimony at the time of her injury she was going to the room of a patient to get her some writing paper to write for her. Presumably, if this child had not been present a paid employee of the nursing home would have been asked to undertake this errand. The service of the child in doing such errands may have been of economic benefit to the nursing home in that it released nursing home personnel for other tasks."
Jones v. Monroe Nursing Home, Inc., 149 Ga. App. 582,254 S.E.2d 902 (1979).
The cases in Alabama have also applied the "economic interest" test in determining whether or not a plaintiff rises to the status of invitee. See, Kitchens v. UnitedStates, 604 F. Supp. 531 (M.D.Ala. 1985) (under Alabama law, "invitee" enters with permission but also to bestow some material benefit on landowner); and Quillen v.Quillen, 388 So.2d 985 (Ala. 1980); (nature of visit must bestow material or commercial benefit upon invitor). The nature of the invitee status, however, is also based upon knowledge, either actual or constructive, on the part of the occupier of the premises that there is a visitor upon the premises.
Jones is distinguishable from the case at bar, in that the owner of the premises in Jones had notice of the minor's presence on the premises. Here, there was no such knowledge, and none can be implied. The defendants could not reasonably expect that Mrs. Raney, in cleaning their offices on the weekends, would bring her small children with her.
Plaintiffs have failed to show that the defendants had any knowledge, either actual or constructive, that Cassie was on the premises. Cassie did not attain the status of invitee, and she was owed a different duty:
 "Under a negligence count, the duty owed by a landowner depends on the status of the injured party in relation to the defendant's land. See Mullins v. Pannell, 289 Ala. 252, 266 So.2d 862 (1972); Autrey v. Roebuck Park Baptist Church, 285 Ala. 76, 229 So.2d 469
(1969). If the injured party is determined to have been a trespasser, the landowner owes only the duty not to wantonly or intentionally injure him. City of Dothan v. Gulledge, 276 Ala. 433, 163 So.2d 217 (1964); Alabama Great Southern Railroad Co. v. Green, 276 Ala. 120, 159 So.2d 823 (1964). 'Under ordinary conditions trespassing children, or children on the land of another as bare licensees, occupy the same position as trespassing adults.' Alabama Great Southern Railroad Co. v. Green, supra; Mullins v. Pannell, 289 Ala. 252, 266 So.2d 862 (1972). If plaintiff is found to have been on defendant's property *Page 1387 
with his consent or as his guest, but with no business purpose, he attains the status of licensee and is owed the duty not to be willfully or wantonly injured or not to be negligently injured after the landowner has discovered his peril. Autrey v. Roebuck Park Baptist Church, 285 Ala. 76, 229 So.2d 469 (1969)."
Tolbert v. Gulsby, 333 So.2d 129, 131 (Ala. 1976). See, also, Foster v. Alabama Power Co., 395 So.2d 27
(Ala. 1981). The owners' duty to Cassie, as either a licensee or a trespasser, was not to willfully or wantonly injure her, or not to allow her to be negligently injured after becoming aware of her peril.
 " 'Wantonness' is the conscious doing of some act or the omission of some duty [by one who has] knowledge of the existing conditions, and [who is] conscious that from the doing of such act or omission of such duty injury will likely or probably result. . . . Wantonness may arise [when one has] knowledge that persons, though not seen, are likely to be in a position of danger, and with conscious disregard of known conditions of danger and in violation of law brings disaster. . . . Wantonness may arise after discovery of actual peril, by conscious failure to use preventive means at hand. . . . Knowledge need not be shown by direct proof but may be shown by adducing facts from which knowledge is a legitimate inference."
Kilcrease v. Harris, 288 Ala. 245, 251, 259 So.2d 797,801-02 (1972). (Citations omitted).
Because it is undisputed that the defendants were unaware of Cassie's presence upon their premises at times when her mother was cleaning the offices, we find no facts to support a count for wantonness. The trial court did not err in granting summary judgment on behalf of the defendants as to the plaintiffs' first claim.
The plaintiffs' second cause of action was based upon the theory that the lye constituted a dangerous instrumentality. The standard of care that the defendants owed with respect to the storage of the lye was to exercise care commensurate with the risk of injury. See, 65 C.J.S. Negligence § 64, et seq. (1966) The storage of the container of lye within locked offices, presumably not accessible to children, meets that standard.
When a dangerous instrumentality injures a child, however, the doctrine of attractive nuisance must also be considered. This doctrine was discussed by the Court in Tolbert v.Gulsby, supra:
 "This doctrine offers an exception to the limited duty owed by a landowner to a trespasser. It applies only where trespassing children are involved. Alabama Great Southern Railroad Co. v. Green, 276 Ala. 120, 159 So.2d 823 (1964); see, Fulford, The Tort Liability of Possessors of Property to Trespassing Children in Alabama, 11 Ala.L.Rev. 1, 9-13 (1958). The doctrine evolved from the 'turntable' theory pronounced by the United States Supreme Court in Sioux City and P.R. Co. v. Stout, 84 U.S. (17 Wall.) 657, 21 L.Ed. 745 (1873) and was adopted by this court in the case of Alabama Great Railroad Co. v. Crocker, 131 Ala. 584, 31 So. 561 (1901). The turntable doctrine over the years has been narrowly applied and rigorous standards of application have developed around its use. The most important restriction is that the dangerous condition on the landowner's property must be found to be naturally attractive to small children — thus leading to the 'attractive nuisance' terminology."
333 So.2d at 132.
A further statement of the doctrine is found in RepublicSteel Corp. v. Tillery, 261 Ala. 34, 72 So.2d 719 (1954):
 "There is no application of the attractive nuisance or turntable cases where the danger is obvious and patent. Luallen v. Woodstock Iron Steel Corp., [236 Ala. 621, 184 So. 182]; Williams v. Bolding, [220 Ala. 328, 124 So. 892]; Ford v. Planters' Chemical Oil Co., [220 Ala. 669, 126 So. 866]. That principle is not supported unless defendant has on his premises a condition which is naturally attractive to children at that place and is likely to be dangerous to such a person in the ordinary course of events, *Page 1388 
all of which is known to defendant and not to the injured person and not obviously dangerous in itself; that there was no warning of the danger given; that the injured person responded to that attraction and went to the place by reason of it and was injured there by pursuing a course of conduct which was to be anticipated in the ordinary course of events. It is not necessary in the exercise of due care to guard against results which should not be reasonably anticipated. Authorities supra.
 ". . . [T]here may be a condition created upon a person's premises ' "where it is so left exposed that they [children] are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them; in such a case, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it, so as to prevent injury to them." ' "
261 Ala. at 37-38, 72 So.2d at 721.
Even if the lye was naturally attractive to children, under these facts it could not be seen as dangerous to children in the ordinary course of events. Cassie did not enter the premises in response to her attraction to the lye. The defendants kept the lye in the bathroom of their locked offices. It could not be reasonably anticipated that a small child would gain access to it during hours when the offices were closed.
As Justice Sayre stated in Sheffield Co. v. Morton,161 Ala. 153, 49 So. 772 (1909):
 "Every theory of negligence works around to the question of whether some one did or failed to do what a reasonably prudent and competent man would be expected to do under given circumstances. In determining what precautions were reasonably necessary and incumbent upon the defendant in the use of its property in the place in question, it must be held to have considered the known extent and nature of the use to which the place was customarily put by others than its owner."
161 Ala. 153 at 161, 49 So. 772 at 774.
Applying this test to the defendants, we conclude that they were not negligent in their storage of the container of lye within their offices. Summary judgment was, therefore, correct. The judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
JONES, ADAMS, HOUSTON and STEAGALL, JJ., concur.