Christopher Copeland ("Chris") and his parents, Fred and Gail Copeland, filed an action against Pike Liberal Arts School ("School") and First Alabama Bank of Troy ("First Alabama"). Chris and his parents alleged separate claims for negligence and wantonness in relation to an injury Chris sustained during a School club's initiation ceremony. The trial court entered summary judgment in favor of both the School and First Alabama on both the negligence claim and the wantonness claim. We affirm in part, reverse in part, and remand.
In January 1985, Chris Copeland was 14 years old and was a freshman at the School. He and nine others were selected to become members of a School club called the "Minutemen," a club primarily for athletes.
Delaney Kervin, headmaster of the School, was the sponsor of the club. Kervin testified that he occasionally had attended Minutemen initiations before January 1985 to see if the members of the club were drinking beer or harassing the initiates too much or mistreating them; the traditional initiation involved pouring syrup, flour, and eggs on the initiates. Kervin also testified that the initiation needed some adult supervision and that he had intended to go to the 1985 initiation, but that it was on a Saturday night and he forgot about it.
On initiation night the Minutemen's members and initiates met at the School. After stopping by a grocery store to purchase supplies for the initiation, the members told the initiates to get into a truck with a camper on it. The initiates climbed into that truck, which was driven by a member, and were taken to a pasture that was owned by G.W. Youngblood. Mark Woodham, a Minutemen member, was Youngblood's grandson, and Woodham had *Page 102 
standing permission to go onto the property. First Alabama held the property in trust for Woodham's mother.
By the time the truck with the initiates arrived at the pasture, the initiates had decided to run from the members in order to avoid having eggs, flour, and syrup smeared on them. As the truck stopped in the pasture, the initiates jumped out of the truck and started running toward some nearby woods. The initiates had run about 15 feet when they all fell into a ravine approximately 20 feet deep, which the plaintiffs contend was hard to see at night and was partially hidden by foliage. The fall injured Chris's ear. The ravine was not created by any action of the defendants, but, instead, was a natural condition of the land.
In January 1986, Chris and his parents filed an action that alleged that the School had negligently and wantonly supervised the initiation. The Copelands also alleged that First Alabama had maintained an unreasonably dangerous condition on its property; that that condition was a trap; and that First Alabama had negligently and wantonly failed to warn of that dangerous condition. The trial court entered summary judgments for both defendants on all claims.
The Copelands argue that the trial court erred when it entered a summary judgment for First Alabama. They argue that when the bank allowed Mark Woodham standing permission to go onto the property, the bank, in effect, delegated to Woodham the responsibility for determining who went on the property and for what purpose. Accordingly, the Copelands argue, the bank delegated to Woodham "the duty it owed to licensees such as the plaintiff." The record does not support such a conclusion.
Undisputed facts concerning the initiation show that Leon Hilliard, president of the bank and head of its trust department, was the one person at the bank responsible for the Youngblood property. No one at the bank had any knowledge that the initiation would take place on the Youngblood property, and neither Hilliard nor anyone else at the bank had given Woodham permission to conduct the initiation on the Youngblood property. Hilliard testified that if Woodham had asked for permission it would have been denied. No initiation had been conducted on the property at any other time. Hilliard further testified that he knew nothing about the ravine on the Youngblood's property and did not know that someone had fallen into the ravine until after the bank was served with the complaint in this lawsuit.
Under Alabama law, the duty owed by a landowner to an injured party depends upon the status of the injured party in relation to the landowner's land. Tolbert v. Gulsby, 333 So.2d 129, 131
(Ala. 1976). The status of the injured party is that of a trespasser, a licensee, or an invitee. The trial court held that whether Chris was a trespasser or a licensee First Alabama was entitled to summary judgment, and that while Chris was not an invitee, even if he had been the bank would be entitled to summary judgment.
If Chris was a trespasser, the duty that First Alabama owed to Chris was not to wantonly or intentionally injure him and to warn him of dangers known by First Alabama after it was aware of danger to Chris. Raney v. Roger Downs Insurance Agency,525 So.2d 1384, 1386-87 (Ala. 1988). Under ordinary conditions, trespassing children or children on the land of another as licensees occupy the same position as trespassing adults. Id.
Specifically, if the trespasser is a child and physical harm to the trespassing child is caused by a natural condition upon the property, the duty that a landowner owes to an adult trespasser is the same and only duty owed to the trespassing child. Motesv. Matthews, 497 So.2d 1121, 1123 (Ala. 1986). If a person is found to have been on a landowner's property with the landowner's consent or as his guest, but with no business purpose, the person is a licensee and the landowner owes him the duty not to willfully, wantonly, or negligently injure himafter the landowner has discovered danger to the licensee.Raney, at 1387, citing Tolbert v. Gulsby, 333 So.2d 129, 131
(Ala. *Page 103 
1976). Accordingly, First Alabama's duty to Chris, whether he was a licensee or a trespasser, was not to willfully or wantonly injure him and not to allow him to be negligently injured after becoming aware of his peril. Id.
The undisputed evidence from the record indicates that First Alabama was unaware of Chris's presence upon the Youngblood premises, indeed, even of his injury, until after the lawsuit was filed, and the evidence further indicated that First Alabama knew nothing about the ravine until after Chris's injury. The Copelands' claim against First Alabama must, accordingly, fail, because First Alabama could not have been aware of Chris's peril.
" 'Wantonness' is the conscious doing of some act or the omission of some duty [by one who has] knowledge of the existing conditions, and [who is] conscious that from the doing of such act or omission of such duty injury will likely or probably result." Kilcrease v. Harris, 288 Ala. 245, 251,259 So.2d 797, 801 (1972). Because the record contains no documentation to show that First Alabama was aware of Chris's presence on the Youngblood property, we find no facts to support a claim based on wantonness. Raney, at 1387. Furthermore, we find no facts indicating that Chris entered the Youngblood property to bestow a material or commercial benefit upon First Alabama, which is a requirement for Chris to be considered an invitee. Raney, at 1386; Quillen v. Quillen,388 So.2d 985 (Ala. 1980) (four Justices concurring in plurality per curiam opinion, one Justice concurring in the result).
The Copelands contend that the ravine Chris fell into was a trap. In Alabama Great Southern R.R. v. Green, 276 Ala. 120,127, 159 So.2d 823 (1964), the Court stated the duty owed a trespasser by a landowner in regard to a trap:
 "A landowner is not bound to provide for a trespasser's safety from undisclosed dangers on his land, or to interrupt his otherwise lawful occupation to provide for the chance that someone may unlawfully be there. He only must refrain from intentionally injuring the trespasser, or laying a trap for him. Erie R. Co. v. Hilt, 247 U.S. 97, 38 S.Ct. 435, 62 L.Ed. 1003. See also, Alabama Great Southern R. Co. v. Cummings, 211 Ala. 381, 100 So. 553, 33 A.L.R. 439.
 "Where the injured party is a trespasser, a trap or pitfall exists only if the landowner prepares the dangerous condition in expectation of the trespass. Moseley v. Alabama Power Co., 246 Ala. 416, 21 So.2d 305."
276 Ala. at 127, 159 So.2d at 830. (Emphasis added.)
In W.S. Fowler Rental Equipment Co. v. Skipper, 276 Ala. 593,600, 165 So.2d 375 (1963), the Court addressed the duty of a landowner to a licensee in relation to traps:
 "The duty of one who owns or is in possession of property towards a licensee is not only to abstain from inflicting intentional, willful or wanton injuries, but to refrain from exposing such licensee to new hidden dangers, such as traps, pitfalls or obstructions which arise through his active negligence. [Citations omitted.]
". . . .
 "This duty does not restrict the owner or possessor's right to make use of the property or to make such changes therein as he may desire, but requires him, if he does any positive act creating a new danger to a person who may exercise the license, to give to such licensee reasonable notice or warning of the new danger or to exercise reasonable care to provide safeguards against such new danger. [Citations omitted.]"
276 Ala. at 600, 165 So.2d at 381-82. (Emphasis added.) SeeDriskill v. Alabama Power Co., 374 So.2d 265, 266 (Ala. 1979).
The record contains no evidence that First Alabama either acted intentionally to injure Chris or took any action in expectation of his being on the property. Instead, the record indicates that First Alabama knew nothing of Chris's presence on the land until after he had filed this action. Furthermore, nothing in the record indicates that First Alabama affirmatively acted to create the ravine that Chris fell into. *Page 104 
The trial court did not err in entering summary judgment in favor of First Alabama on all the claims.
The Copelands argue that the trial court erred when it entered summary judgment for the School on the Copelands' negligence and wantonness claims. In relation to the wantonness claim, the Copelands state that Kervin's testimony that adult supervision was necessary at the initiation, combined with his testimony that he sometimes attended the initiations because he wanted to be sure that the members were not drinking beer or mistreating the initiates, was sufficient evidence of wantonness to defeat the School's motion for summary judgment on the wantonness claim. The Copelands further assert that Kervin's allowing the members to conduct the initiation unsupervised was a reckless delegation of authority that would support a claim for wantonness. Kervin testified that he intended to go to the initiation, but that it was on Saturday night and he forgot about it. Considering that wantonness requires consciously doing an act or omitting a duty while consciously realizing that the act or omission of the duty will likely or probably lead to injury, Kilcrease, supra, we hold that the trial court did not commit reversible error when it entered summary judgment for the School on the Copelands' wantonness claim.
The Copelands' final argument is that the trial court erred when it held that Chris was contributorily negligent as a matter of law. In order to sustain a finding of contributory negligence as a matter of law, there must be a finding that the plaintiff put himself in a position to be harmed by the danger that his claim of negligence addresses, Mackintosh Co. v.Wells, 218 Ala. 260, 118 So. 276 (1928), and a finding that the plaintiff appreciated the danger confronted, Wilson v. AlabamaPower Co., 495 So.2d 48 (Ala. 1986); Marquis v. Marquis,480 So.2d 1213 (Ala. 1985). Furthermore, the plaintiff must have appreciated the danger at the moment the incident occurred.Central Alabama Electric Cooperative v. Tapley, 546 So.2d 371
(Ala. 1989); Elba Wood Products, Inc. v. Brackin, 356 So.2d 119
(Ala. 1978).
The School asserts that Chris's own testimony established that he was contributorily negligent. Chris testified that during the week prior to the initiation he considered running away from the members at the initiation in order to avoid having eggs, flour, and syrup smeared on him. While Chris and the other initiates were being driven to Youngblood's farm, he made the final decision to run. According to Chris, when he ran it was dark and "you could tell what was in front of you, but you could not tell where you were running." Chris stated that he knew that running in the dark was dangerous, but that, at that time, he was not thinking about it.
The Copelands assert that the record indicates that it was a traditional part of the initiation for the initiates to run from the members, although it was not an "official" part of the initiation, and that running was expected of the initiates. From this evidence, the Copelands argue, the jury would be entitled to determine that Chris did not appreciate the danger he was in, because he, considering that running was traditional and expected, relied on the School and the club not to put him in a place where it would be dangerous to run 15 feet. The Copelands further assert that a jury could determine that Kervin knew that the initiates' running from the members was traditional and that, even though he testified that the initiation needed supervising, he did not supervise the initiation or see that the initiation was supervised. From this evidence, even had there been no more evidence, the Copelands argue, the jury would be entitled to determine that the School negligently supervised the initiation. We agree.
Contributory negligence is a defense that the defendant bears the burden of proving. Rule 8(c), A.R.Civ.P. Whether a plaintiff was contributorily negligent is for the jury to determine, where there is a scintilla of evidence that the plaintiff was not contributorily negligent. Tapley, supra; ElbaWood Products, supra; Bullen v. Roto Finishing Systems,435 So.2d 1256 (Ala. *Page 105 
1983). Considering the entire record, we hold that the trial court erred when it held that the Copelands' negligence claim against the School was barred as a matter of law.
The judgment, insofar as it favors First Alabama, and insofar as it favors the School on the Copelands' wantonness claims, is due to be affirmed; however, insofar as it favors the School on the Copelands' negligence claims, it is due to be reversed and the cause remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and STEAGALL, JJ., concur.