This appeal presents a question of the liability of the defendant for injuries suffered by her 22-month-old great-granddaughter, when the child ingested tranquilizers that the defendant had left on a shelf *Page 454 
over the bed in which the child was to sleep.
The trial court directed a verdict for the great-grandmother on the ground that the plaintiff had failed to prove, by substantial evidence, that the great-grandmother had been guilty of willfulness or wantonness.
The basic facts giving rise to the action are that in May 1988, the infant, Felicia Casey, and her parents spent the night at the home of the infant's great-grandmother, Ethel Oliver, who was the grandmother of Felicia's mother, Melissa Casey.
The sleeping arrangements were that Felicia and her mother, Melissa, were to sleep in Ms. Oliver's bed, and Marty, Felicia's father, was going to sleep in a back bedroom. Ms. Oliver was going to sleep in another bedroom in the house. Even though when she left her own bedroom Ms. Oliver took with her a bag containing her medicine, it is undisputed that a sample bottle containing Sinequan, a trade name for the generic drug Doxepin, was left on a small wicker shelf about 12 inches above Ms. Oliver's bed, in which Felicia was to sleep with her mother.
Just before the family went to bed, Melissa was in the bathroom and Marty was in the back bedroom. Ms. Oliver was in the front bedroom preparing for bed. Upon entering Ms. Oliver's bedroom, Melissa saw Felicia with five pills in her hand and an open medicine bottle on the bed. Melissa examined Felicia's mouth and throat but found nothing. She then summoned Marty and Ms. Oliver to come into the room. When Melissa asked Ms. Oliver how many pills had been in the bottle, Ms. Oliver said that she had two sample bottles, and that each bottle contained five pills, that she had combined the two bottles, and had taken a total of five pills, which would have left five pills in the bottle. Ms. Oliver also told Melissa that "it wouldn't hurt her if she had taken it [the medication] . . . [i]t was just cold medicine, and she knew there was only five pills in the bottle." Melissa and Marty discussed taking Felicia to the emergency room or to the poison control center. Ms. Oliver said, according to the record, "there is no reason to [take Felicia to the emergency room or poison control center] because there were only five pills in the bottle, and even if she had taken any, it won't hurt her." Melissa and Marty claimed that they relied upon these statements and did not take Felicia to receive any emergency treatment at that time. After her parents talked to Felicia and checked her mouth, everyone went to bed.
The next morning, Felicia could not be awakened. She was rushed to the emergency room at Guntersville Hospital where she was treated for a drug overdose. After Felicia had a grand mal seizure, she was transported to the pediatric intensive care unit at Children's Hospital in Birmingham, where she was treated further for Sinequan ingestion. There was evidence presented that, based on tests, Felicia could have swallowed as many as four of the Sinequan pills.
In his complaint, Marty Casey, as next friend of Felicia, alleged that Ms. Oliver had "negligently left the [Sinequan] out where the two (2) year old guest could easily get it"; that after the child had swallowed the pills, she represented to the parents that "she knew how many pills had been in the medicine bottle and that the minor had not swallowed any"; and that the parents had relied on this representation and had delayed seeking medical assistance for several hours.
It is apparent from the record that the trial judge, based on the evidence, was of the opinion that the plaintiff had failed to show, by substantial evidence, that Ms. Oliver was guilty of willfulness or wantonness. He, therefore, directed a verdict in favor of Ms. Oliver.
On appeal, Casey argues that "the trial judge probably would not have granted the Defendant's motion for a directed verdict had he used a standard of care which required simple negligence." Our examination of the record convinces us that this statement in Casey's brief is probably true. Consequently, our review must be based upon the law as it applies to children of tender years who are licensees.
We begin our review by stating the law concerning the quantum of proof required *Page 455 
in order for a party to defeat a motion for a directed verdict. Our law provides that "[i]n all civil actions . . . proof by substantial evidence shall be required to submit an issue of fact to the trier of fact." Ala. Code 1975, § 12-21-12; see Ala.R.Civ.P. 50; Ex parte Oliver, 532 So.2d 627 (Ala. 1988).
We begin our analysis of the directed verdict by stating that all of the parties agree that the child was a social guest and had the status of a licensee. In view of this fact, the only question presented is whether there was substantial evidence that Ms. Oliver had breached a duty owed to the infant licensee.
In order to decide this issue, we must examine, once again, the principles of law dealing with a premises owner's duty to a child of tender years who is on the premises. This Court, inTolbert v. Gulsby, 333 So.2d 129, 131 (Ala. 1976), set out the principle of law to be applied, as follows:
 "Under a negligence count, the duty owed by a landowner depends on the status of the injured party in relation to the defendant's land. See Mullins v. Pannell, 289 Ala. 252, 266 So.2d 862
(1972); Autry v. Roebuck Park Baptist Church, 285 Ala. 76, 229 So.2d 469 (1969). If the injured party is determined to have been a trespasser, the landowner owes only the duty not to wantonly or intentionally injure him. City of Dothan v. Gulledge, 276 Ala. 433, 163 So.2d 217 (1964); Alabama Great Southern Railroad Co. v. Green, 276 Ala. 120, 159 So.2d 823 (1964). 'Under ordinary conditions trespassing children, or children on the land of another as bare licensees, occupy the same position as trespassing adults.' Alabama Great Southern Railroad Co. v. Green, supra; Mullins v. Pannell, 289 Ala. 252, 266 So.2d 862 (1972). If plaintiff is found to have been on defendant's property with his consent or as his guest, but with no business purpose, he attains the status of licensee and is owed the duty not to be willfully or wantonly injured or not to be negligently injured after the landowner has discovered his peril. Autry v. Roebuck Park Baptist Church, 285 Ala. 76, 229 So.2d 469 (1969)."
Based on these principles of law, Ms. Oliver's owed to Felicia the duty "not [to] willfully or wantonly injure her, or not to allow her to be negligently injured after becoming aware of her peril." Raney v. Roger Downs Ins. Agency, 525 So.2d 1384
(Ala. 1988). See also Copeland v. Pike Liberal Arts School,553 So.2d 100 (Ala. 1989).
In Raney, a child of tender years had gone with her parents to the offices of an insurance agency that her parents had contracted to clean over the weekend. While using the bathroom in the offices, the child found an open container of lye on the bottom shelf of the bathroom and, mistakingly thinking it was sugar, put a spoonful of it in her mouth, and was injured. In that case, this Court, pointing out that the defendant had noknowledge that the child would be on the premises, held that the trial court correctly entered a summary judgment in favor of the defendant insurance agency. The Court noted that "plaintiffs' second cause of action was based upon the theory that the lye constituted a dangerous instrumentality" and that "[t]he standard of care that the defendants owed with respect to storage of lye was to exercise care commensurate with the risk of injury," but that "[t]he storage of the container of lye within locked offices, presumably not accessible to children, [met] that standard."
In Raney, this Court also mentioned the doctrine of "attractive nuisance" discussed by this Court in Tolbert v.Gulsby, and, quoting from Republic Steel Corp. v. Tillery,261 Ala. 34, 38, 72 So.2d 719 (1954), stated:
 " '. . . [T]here may be a condition created upon a person's premises " 'where it is so left exposed that they [children] are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them; in such a case, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it, so as to prevent injury to them.' " ' "
525 So.2d at 1388. (Citation omitted.)
In Raney, this Court quoted a definition of "wantonness" in a context of liability to *Page 456 
licensees that was contained in a previous case:
 " 'Wantonness' is the conscious doing of some act or the omission of some duty [by one who has] knowledge of the existing conditions, and [who is] conscious that from the doing of such act or omission of such duty injury will likely or probably result. . . . Wantonness may arise [when one has] knowledge that persons, though not seen, are likely to be in a position of danger, and with conscious disregard of known conditions of danger and in violation of law brings disaster. . . . Wantonness may arise after discovery of actual peril, by conscious failure to use preventive means at hand. . . . Knowledge need not be shown by direct proof but may be shown by adducing facts from which knowledge is a legitimate inference. Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797
(1972)."
525 So.2d at 1387.
In Raney, it is apparent that this Court's decision was based upon the fact that the evidence was undisputed that the lye was located in a bathroom, that the offices were closed, and that the insurance agency had no knowledge that the child would beon the premises at all. In view of that fact, it would appear that Raney, relied upon by Ms. Oliver to support her argument on appeal, is distinguishable. Here, it is undisputed that the bottle of Sinequan was left on a shelf that was accessible to Felicia and that Ms. Oliver knew that Felicia would be in the room. Based on these facts, we believe that a jury question was presented whether a dangerous condition was created upon the premises, and whether it was left so exposed that a child would likely come in contact with it and by coming in contact with it would likely or probably suffer injury. See Raney,525 So.2d 1384; Republic Steel Corp. v. Tillery, 261 Ala. 34,72 So.2d 719. Therefore, we can not say that, as a matter of law, there was no substantial evidence to show that Ms. Oliver violated her duty not to wantonly injure Felicia by leaving the medication in her bedroom in a container that the child could open.
There is yet another reason why a directed verdict was inappropriate in this case. There was evidence that after Ms. Oliver knew that the child had opened the bottle containing the medication, she told the child's parents that "it wouldn't hurt her if she had taken it [the medication] . . . [i]t was just cold medicine, and [that] she knew there was only five pills in the bottle." Casey claims that this evidence shows that Ms. Oliver was guilty of "active negligence," which would remove this case from the standard of care generally used with licensee cases, and place it under the standard set out inOrr v. Turney, 535 So.2d 150, 152 (Ala. 1988):
 "In cases involving injury resulting from active conduct, as distinguished from conditions of the premises, the landowner or possessor may be liable for failure to exercise ordinary care towards a licensee whose presence on the land is known or should reasonably be known to the owner or possessor." (Citations omitted.)
In Orr the plaintiff, a 15-month-old boy visiting the home of the defendant, was playing outside with some other children at the bottom of the steps that led out of the defendant's kitchen. While the defendant was cooking, a pan of grease caught on fire. The defendant grabbed the pan and flung open the kitchen door. The pan apparently became too hot to hold, and the defendant dropped it, splattering hot grease on the plaintiff and burning him severely.
This Court held that the trial court erred in directing a verdict for the defendant, because the evidence indicated that she committed an affirmative act, which would have increased her duty to act with reasonable care, and "the jury could conclude that [the defendant's] acts were done consciously with reckless indifference for their consequences." Id.
The distinction between liability based upon the affirmative conduct of the premises owner (Orr) and the liability of an owner for a condition of the premises (Raney) is somewhat blurred. In Raney, this Court stated that the landowner owes to the licensee a duty "not to allow [the licensee] to be *Page 457 
negligently injured after becoming aware of [the licensee's] peril." 525 So.2d at 1387. The facts of this case, we find, require the application of the principles of law set out inRaney. The facts are somewhat similar, in that a condition was created and a child came in contact with it and was injured. In that case, of course, there was no evidence that the defendants had any knowledge, either actual or constructive, that the minor plaintiff was on the premises. In this case, the jury could infer from the evidence that the premises owner had knowledge that the pills were on the shelf over the bed in which the child would be sleeping and knew that if the child came in contact with them, the child would likely or probably be injured as a result. The jury could further infer that the premises owner, after becoming aware that the child had possibly ingested some of the pills and was in a position of peril, was negligent in representing to the child's parents that immediate medical attention was unnecessary.
Therefore, we hold that the trial court committed reversible error when it directed a verdict for Ms. Oliver on Casey's claims of negligence. The judgment of the trial court is, therefore, reversed and the cause is remanded to the trial court.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.