YATES, Judge.
C.W. Riley, individually and as next friend of his nine-year-old son, Zachary L. Riley, sued James R. Edgar, Nancy Sue Edgar, and Kevin Edgar, alleging, among other things, that Zachary had been bitten by a pit bull dog owned by the Edgars; that the dog was of a “vicious nature and disposition,” which was known or should have been known by the Edgars; that the Edgars had been negligent in failing to restrain, or otherwise take precaution, to prevent the dog from injuring Zachary; and that Zachary had suffered injuries as a result of being bitten by the dog.
The case proceeded to trial; at the close of Riley’s evidence, the Edgars moved for a directed verdict on all claims. The court granted the motion as to all claims except the claim alleging common-law negligence. Thereafter, at the close of all the evidence, the Edgars renewed their motion for a directed verdict as to the common-law negligence claim. The court denied that motion and submitted the common-law negligence claim to the jury. The jury returned a $30,-000 verdict for Riley. The Edgars moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court denied them motion. The Edgars appeal, arguing that the court erred in denying their motion for a directed verdict and in submitting the common-law negligence claim to the jury.
“A motion for a directed verdict or a JNOV is due to be granted when the non-moving party has failed to present substantial evidence to support his or her position. Substantial evidence is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ This court, when reviewing the denial of a directed verdict or a JNOV, applies the same standard the trial court applies when it considers a motion for a directed verdict or a JNOV. The ultimate question regarding either motion is whether the nonmovant has presented substantial evidence supporting each element of his claim. In reviewing directed verdict and JNOV motions, we must review all the evidence in a light most favorable to the nonmovant and must consider such reasonable evidentiary inferences as the jury would be free to draw.”
Liberty National Life Ins. Co. v. Caddell, 701 So.2d 1132, 1134 (Ala.Civ.App.1997).[1]
Kevin Edgar purchased a purebred pit bull dog in 1990. Kevin lived with his parents, James and Nancy Edgar, and kept the dog at their home. Kevin and Nancy testified that the dog was a house pet, that it had always lived inside the house, and that it was let outside only on those several occasions each day when it was allowed out to relieve itself. This evidence was contradicted by other evidence offered at trial that indicated that on a regular basis the dog stayed outside the house unrestrained, primarily when the Ed-gars were at home.
The Rileys and the Edgars are neighbors. On Easter Sunday in 1995, Zachary rode his bicycle to the Edgars’ home. Mr. Riley called for him to return home. Upon returning home, Zachary informed Mr. Riley that James and Kevin were “grilling,” and he asked permission to return to the Edgars’ home; Mr. Riley gave Zachary permission to return. Zachary returned to the Edgars’ home on his bicycle. As Zachary was getting off his bicycle, the dog bit him on the leg. The dog attempted to bite Zachary a second time; however, Kevin called off the dog before it was able to do so. James brought Zachary back to the Rileys’ home in his truck and informed Mr. Riley that the dog had bitten Zachary and that Zachary needed to go to the hospital. Zachary underwent surgery on his leg; he suffered no permanent damage other than scarring.
*984 The Edgars first argue that on the day Zachary was bitten they were not aware that he was on their property, until after he had been bitten. Therefore, they say, Zachary was & trespasser on their property and, thus, the only duty they owed him was the duty not to wantonly or wilfully injure him.[2] Our supreme court has stated:
“ ‘Under a negligence count, the duty owed by a landowner depends on the status of the injured party in relation to the defendant’s land. If the injured party is determined to have been a trespasser, the landowner owes only the duty not to wantonly or intentionally injure him. “Under ordinary conditions trespassing children, or children on the land of another as bare licensees, occupy the same position as trespassing adults.” If plaintiff is found to have been on defendant’s property with his consent or as his guest, but with no business purpose, he attains the status of licensee and is owed the duty not to be willfully or wantonly injured or not to be negligently injured after the landowner has discovered his peril.’ ”
Raney v. Roger Downs Insurance Agency, 525 So.2d 1384, 1386-87 (Ala.1988), quoting Tolbert v. Gulsby, 333 So.2d 129, 131 (Ala.1976) (citations omitted). Further, this court has defined a “trespasser” as follows:
“‘A person is a trespasser where he enters on the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in the performance of any duty to the owner or person in charge or any business of such person, but merely for his own purposes, pleasure, or convenience, or out of curiosity, and without any enticement, allurement, inducement, or express or implied assurance of safety from the owner or person in charge. As otherwise expressed, a trespasser is a person entering or remaining on land in another’s possession without privilege to do so, created by the possessor’s consent or otherwise.”
Yeilding v. Riley, 705 So.2d 426, 429 (Ala.Civ.App.1997), quoting 65 C.J.S. Negligence § 63(3)(1966) (footnotes omitted).
The evidence indicates that Zachary was often at the Edgars’ home. Zachary testified that he would visit the Edgars’ home three times a week, primarily to see Kevin and to help him with his hogs. Kevin testified that Zachary would visit much more than three times a week, probably a total of approximately 100 times over a six-month period. Mr. Riley testified that he had become concerned over the amount of time Zachary was spending at the Edgars. He stated that he had spoken with Kevin on one occasion and had asked him if Zachary was bothering anyone. Mr. Riley testified that Kevin had told him that Zachary was not bothering anyone and that he was welcome any time at the Edgars’ home. Mr. Riley said he had told Kevin that if at any time Zachary’s presence became a problem then Kevin should inform him. Kevin never informed Mr. Riley that Zachary was unwelcome. Mr. Riley said he also discussed with Nancy Edgar the matter of Zachary’s presence at the Edgars’ home. Mr. Riley stated that she had informed him that Zachary was welcome at their home. Mr. Riley stated that at no time did the Edgars tell him that Zachary was spending too much time at their house or that he was unwelcome. Zachary testified that none of the Edgars had ever told him not to come to their home.
Both Kevin Edgar and Nancy Edgar testified that they had no recollection of a conversation with Mr. Riley regarding Zachary’s frequent visits at their home. Kevin testified that on numerous occasions he had asked Zachary to go home. Nancy testified that on one occasion she had told Zachary to go home, after he had attempted to remove a stray dog from the Edgars’ property and it had growled at him.
Zachary stated that on the morning the dog bite occurred, he had ridden into the Edgars’ yard on his bicycle and that he had seen Kevin and James, but had not said anything to them. He testified that he left, *985 but that they had not told him to leave. Zachary was bitten by the dog on his second trip to the Edgars’ home that morning. Zachary testified that the Edgars were aware of his presence then, because, he said, they were looking at him as he rode up on his bicycle. Kevin testified that he saw Zachary ride into the yard, that he saw the dog near Zachary’s bicycle, that he saw the dog bite Zachary, and that he then immediately called the dog off before the dog could bite Zachary a second time.
Viewing the evidence in a light most favorable to Riley, and drawing all reasonable inferences from the evidence, we conclude that the jury could have found that Zachary was not a trespasser on the Edgars’ property on the day he was bitten, but was a licensee on the Edgars’ property, with the consent or permission of the Edgars. The jury could find that Zachary was a frequent visitor at the Edgars’ home and that he was welcome there anytime. Additionally, the jury could find that no one had ever asked Mr. Riley not to permit Zachary to visit the Edgars’ home. The jury could infer from the evidence that the Edgars had consented to Zachary’s presence on their property on the day he was bitten. The evidence also indicates that at the time Zachary was bitten Kevin and James Edgar were aware of Zachary’s presence. Accordingly, the jury could find that the Edgars owed Zachary a duty not to negligently injure him. Raney, supra.
The Edgars next argue that Riley failed to prove by substantial evidence that they had knowledge of the dangerous propensities of the dog. In Humphries v. Rice, 600 So.2d 975 (Ala.1992), our supreme court held that “an owner or keeper of an animal will be charged with knowledge of the propensities of the breed of animal he or she owns.” Id., at 978 (emphasis added). The court in Hum-phries adopted as the Alabama rule the following statements from 4 Am.Jur.2d Animals § 86, 90 (1962), as quoted in Justice Jones’s dissenting opinion in Coley v. Hendrix, 508 So.2d 216, 217 (Ala.1987):
“ ‘[T]he owner or keeper of a domestic animal is bound to take notice of the general propensities of the class to which it belongs, and also of any particular propensities peculiar to the animal itself of which he has knowledge or is put on notice; and insofar as such propensities are of a nature likely to cause injury he must exercise reasonable care to guard against them and to prevent injuries which are reasonably to be anticipated from them....’
[[Image here]]
‘“Even in the absence of any known viciousness in a domestic animal, its owner is obliged to exercise over it a certain degree of care depending upon the kind and character of the particular animal concerned, the circumstances in which it is placed, and the purposes for which it is employed or kept. The owner or keeper of a domestic animal is charged with knowledge of the natural propensities of animals of the particular class to which this animal belongs, and, if these propensities are of the kind that might cause injury he must exercise the care necessary to prevent such injuries as may be anticipated.’ ”
600 So.2d at 978.
The evidence indicated that the dog had not displayed any vicious propensities before it attacked Zachary; that it had been exposed to people and had never before attempted to bite or otherwise to harm anyone; and that Zachary had played with the dog on a number of occasions before the attack and it had never exhibited any vicious propensities toward him. Dr. John H. Lester, a veterinarian, testified that, as a breed, pit bull dogs are unpredictable and can be vicious and dangerous. He stated that they are bred to fight and attack and that when they bite they tend to hold on until called off. Dr. Lester further testified that he is apprehensive when handling pit bull dogs and does not recommend them as pets.
The Edgars testified that they did not investigate the particular propensities or characteristics of pit bull dogs as a breed before purchasing the dog and that they did not feel they had had an obligation to do so. They also testified that they had never warned anyone, including Zachary, about the propensities or characteristics of the dog. Further, the dog often remained outside and unrestrained. The jury could have found implausible Kevin and Nancy Edgar’s testi *986 mony that they had never heard, and had no knowledge, that pit bull dogs as a breed are vicious or dangerous.[3]
The Edgars were charged with knowledge of the propensities of the breed of dog they owned. The jury heard evidence indicating that the pit bull breed was unpredictable and could be vicious and dangerous; that the Edgars had permitted the dog to remain outside and unrestrained on a regular basis; and that they had failed to warn Zachary regarding that breed’s vicious propensities and characteristics. The jury could infer from this evidence that the Edgars breached the duty owed to Zachary to use reasonable care to prevent injury to him.
The court properly denied the Edgars’ motion for a directed verdict.
AFFIRMED.
ROBERTSON, P.J., and MONROE and THOMPSON, JJ., concur.
CRAWLEY, J., recused.

. The motion for a directed verdict and the motion for a judgment notwithstanding the verdict are now referred to in Rule 50(a) and (b), Ala. R. Civ. P., as “a motion for judgment as a matter of law” and "a renewal of the motion for a judgment as a matter of law,” respectively. See Ex parte City of Geneva, 707 So.2d 626 (Ala.1997).

. The court did not charge the jury on the law of premises liability; however, the issue whether Zachary was a trespasser was raised in the Ed-gars’ answer to Riley’s complaint and in the Edgars' motion for a judgment notwithstanding the verdict.

. The supreme court, in Gentle v. Pine Valley Apartments, 631 So.2d 928, 932 (Ala.1994), noted that the pit bull is "a breed of dog that has achieved a remarkable notoriety for aggressiveness.”