[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 222 
Jerry W. Sims filed a wrongful-death action against Michael T. Ilczyszin and Clark McDuffie Crates. The trial court entered a summary judgment in favor of Ilczyszin and a judgment on a jury verdict in favor of Crates. Sims appeals. We affirm the judgment in favor of Ilczyszin, reverse the judgment in favor of Crates, and remand.
 I.
In the early morning hours of July 24, 1998, Jerry Sims's 16-year-old son, Christopher Brian ("Chris") Sims, shot himself in the head with a .357 handgun while he was at a party hosted by Crates at Ilczyszin's home. Ilczyszin is Crates's stepfather and is a Montgomery police officer. He was on assignment in Hawaii with the Marine Corps Reserve when the incident occurred, and did not know that his stepson was having a party in his home while he was out of town.
Crates and Chris Sims became friends while they lived on the same street. At the time of the accident, Crates was 23 and Chris Sims was 16. Chris Sims's parents are divorced. The testimony reflects that during the year before the incident, Chris Sims was admitted by his mother to a substance-abuse program operated by Bradford Health Services. After being discharged from Bradford, Chris went to a facility named The Bridges, but he was discharged from that facility for fighting. His father, who testified that initially he did not believe Chris had a drug problem, then obtained custody of him. Chris was expelled from a private school for fighting, and he switched schools several times. Chris also attended Project Upward, but was expelled from that program for fighting. Chris began working with a logging company owned by the grandparents of one of his close friends, Ronnie Armstrong. At the time of the incident, Chris Sims, Crates, and Armstrong were all working for the logging company and were living in Georgia together. They had returned to Montgomery a week before the incident. Because Ilczyszin was in Hawaii, he did not know they had returned. Before leaving to go on duty with the Marine Corps, he had told Crates that, by the end of August, he would no longer allow him to live in his home because, he had said, Crates was 23 years old and "he needed to get on with his own life."
The record indicates that Ilczyszin collects handguns and rifles. The rifles are kept in a locked cabinet. The handguns are kept in Ilczyszin's bedroom in an unlocked cabinet that is built into the headboard of his bed. All of the handguns are kept unloaded, however, and the ammunition is kept in a separate locked cabinet. The testimony during the trial indicated that Chris obtained the ammunition for the .357 handgun from another teenager who attended the party, Isaac Barber, not from Ilczyszin's locked cabinet. Barber testified that he and his brother "took" the ammunition from a neighbor. *Page 223 
The evidence indicates that Crates opened Ilczyszin's home to a group of teenagers on the afternoon and evening of July 23. During the night, Chris and Barber went into Ilczyszin's bedroom and took two unloaded handguns. They walked around with the guns in the waistbands of their pants. About a half hour later, the group left and went to Barber's house. There, Chris got into an argument with Jessica Armstrong; the argument resulted in his hitting an aquarium and badly cutting his hand. His friends took him to a local emergency room ("ER"), but he would not get out of the car. Later, when he began to feel sick, they again took him to the ER, where he was treated for the cut to his hand. The group left the ER about 3:45 a.m. and returned to Ilczyszin's house.
About 4:00 a.m., Melissa Horn, Ann Barber, and Maria Murphy were in the kitchen with Chris, who at the time was playing with a .357 handgun. He had obtained .357 cartridges in a "ziplock bag" from Isaac Barber. Chris was taking the cartridges in and out of the chamber of the revolver and spinning the chamber around. The girls told him to stop playing with the gun. Chris stated that he could not die, put the gun to his head, and pulled the trigger, but nothing happened. One of the girls left to get someone to take the gun away from Chris, but Chris again put the gun to his head and pulled the trigger. This time the gun discharged and Chris fell to the floor.
An autopsy revealed that Chris had alcohol, cocaine, and marijuana in his system. Isaac Barber testified that earlier in the day Ronnie Armstrong and Chris had bought marijuana and the three of them had smoked it. There was no testimony to indicate that Crates had supplied either marijuana or cocaine to Chris that day. There was testimony that alcohol purchased by Crates was present in the home.
Jerry Sims sued Crates and Ilczyszin, alleging that his son's death was the proximate result of negligent, willful, or wanton acts on their part. Specifically, he alleged that Ilczyszin had left a loaded handgun in his home with knowledge that Crates would have access to it, and he alleged that Crates had provided alcoholic beverages to Chris Sims, as well as to other minors, in violation of § 13A-11-57 and § 13A-11-10.1, Ala. Code 1975. The defendants asserted in their answer the affirmative defenses of contributory negligence and assumption of the risk. The trial court entered a summary judgment for Ilczyszin. The case against Crates proceeded to a jury trial; the jury returned a verdict in his favor. The court entered a judgment on that verdict.
 II.
Jerry Sims contends that the trial court erred in entering the summary judgment in favor of Ilczyszin. He argues that Chris Sims was a licensee on Ilczyszin's property at the time of his death and that Ilczyszin, as a homeowner, owed Chris, as a licensee, the duty not to willfully or wantonly injure Chris, or allow Chris to be negligently injured after discovering Chris's peril. Jerry Sims alleges that Ilczyszin allowed Crates to have access to the handguns he kept in the unlocked cabinet, that Ilczyszin was aware that Crates allowed minors to handle the handguns, and that as a police officer he should have been aware of how easy it would be for a teenager to obtain ammunition. Ilczyszin's conduct, Jerry Sims argues, was willful or wanton. Jerry Sims also argues that assumption of the risk and contributory negligence are normally questions for a jury, and that those defenses are not valid defenses to claims based on willful or wanton conduct. *Page 224 
Jerry Sims failed to present substantial evidence of willfulness or wantonness on the part of Ilczyszin, who did not even know a party was occurring in his home. Ilczyszin could breach no duty to Chris, because he was unaware of Chris's presence in his home until after the death had occurred. In Raney v. Roger Downs Insurance Agency, 525 So.2d 1384
(Ala. 1988), the parents of a child injured in the offices of an insurance agency while her mother was cleaning those offices sued the insurance agency and its principals, alleging that the child's injuries were the result of the defendants' negligence or wanton conduct. The defendants had hired the child's mother to clean the insurance agency's offices on the weekends, while the offices were closed. Without the defendants' knowledge, the mother often took her two small children with her when she cleaned the offices. On the day of the injury, one of the children found an open container of white granular powder on a bathroom shelf; there was a spoon in the powder. Thinking the powder was sugar, she put the spoon in her mouth. The powder was lye, and it caused painful burns to the child's mouth. 525 So.2d at 1385. Because the defendants were unaware that the child was with her mother when the mother was cleaning the offices, this Court affirmed the summary judgment for the defendants, stating that the facts did not support a claim of wantonness. Id. at 1387. See, also, Copeland v. Pike Liberal ArtsSchool, 553 So.2d 100 (Ala. 1989), in which this Court held that the defendant landowner was not liable for an injury the plaintiff sustained when he fell into a ravine on the landowner's property. The landowner did not know the plaintiff was on the property and was unaware of his peril until after his fall.
Jerry Sims contends that Ilczyszin's keeping guns in his home constituted willful or wanton conduct toward Chris Sims; this contention does not support his claim. The testimony indicated that most of the weapons in the Ilczyszin home were kept in locked cabinets and that the few kept in unlocked cabinets were unloaded; that ammunition was not stored with those weapons, but was stored separately in a locked area; and that the cartridges Chris placed into the gun with which he shot himself did not belong to Ilczyszin, but were brought to the house by Chris and Isaac Barber.
Moreover, we find no evidence to support a claim that Ilczyszin allowed Chris to be negligently injured. Chris's own actions were sufficient to break any chain of causation between Ilczyszin's actions and Chris's death. It is settled law in Alabama that even if one negligently creates a dangerous condition, he or she is not responsible for injury that results from the intervention of another cause, if at the time of the original negligence, the intervening cause cannot reasonably be foreseen. Gilmore v. Shell Oil Co., 613 So.2d 1272 (Ala. 1993). InGilmore, an employee at a gasoline station/convenience store kept a loaded handgun on a shelf beneath the counter in the store. The plaintiff's son, Michael Gilmore, was a friend of another employee. On the day he died, Michael had gone to the store to visit his friend. The employee who owned the handgun testified that on that day, he had inadvertently left the handgun on the shelf beneath the counter. Michael went behind the counter to make a telephone call; while there, he took the handgun from underneath the counter. His friend testified that Michael "opened the chamber of the handgun and removed all the bullets. Michael then replaced one of the bullets, closed the chamber, put the handgun to his head, and pulled the trigger." 613 So.2d at 1274. The shot killed Michael. This *Page 225 
Court held that his conduct was an efficient intervening cause that negated any liability of the defendants for any negligence on their part in leaving the handgun on the shelf.
 "The death of Michael Gilmore is also an unexplainable tragedy. We do not understand, nor do we attempt to rationalize, his deliberate and destructive final act. However, we recognize that such acts are not the ordinary and naturally flowing consequences of the defendants' negligent conduct in leaving the handgun under the cashier's counter where it was accessible to those persons who might find themselves behind the cashier's counter. What relieves the defendants of any liability for Michael's death is that Michael, by his own hands, acted intentionally and deliberately in a manner that was calculated to result in his own death."
Id. at 1278.
The death of Chris Sims also is an unexplainable tragedy. It is not, however, a tragedy for which Ilczyszin is liable. The trial court properly entered the summary judgment in favor of Ilczyszin.
 III.
In regard to the judgment in favor of Crates, Jerry Sims contends that the trial court erred in refusing to instruct the jury that contributory negligence and assumption of the risk are not defenses to claims based on willful or wanton conduct. The trial court instructed the jury, in pertinent part:
 "[I]n this case the defendant is alleging contributory negligence. And if you find that there was contributory negligence, that is a complete bar to recovery. I'm going to tell you what that is. Contributory negligence is negligence on the part of the plaintiff that proximately contributed to the alleged death.
 "The defendant's answer raising contributory negligence is an affirmative defense. Therefore, the burden is upon the defendant to reasonably satisf[y] each and every one of you from the evidence as to the truth of all of the material allegations of this defense of contributory negligence.
 "If you are reasonably satisfied from the evidence that the plaintiff was guilty of contributory negligence, the plaintiff cannot recover for any initial simple negligence of the defendant. [This portion of the court's charge is quoted from Instruction 30.02, Alabama Pattern Jury Instructions: Civil (2d ed. 1993) (`APJI').]
 "Now, a person who voluntarily becomes intoxicated is required to exercise the same degree of care as is required of a sober person under the same or similar circumstances. It is proper for you to consider whether or not the plaintiff was intoxicated together with all the other facts and circumstances in determining whether or not the plaintiff was contributorily negligent at the time of the occurrence.
 ". . . [T]he defendants are also claiming assumption of risk. The three elements essential to assumption of risk or contributory negligence in cases of the kind that we are talking about here are that the party charged with the assumption of risk or contributory negligence, number one, had knowledge of the existence of the dangerous condition, and, number two, with the appreciation of such danger, and, number three, failed to exercise care for his own safety by putting himself in the way of such known danger. [This portion of the court's charge is substantially quoted from APJI 30.05.]
 "In other words, you can consider whether or not Christopher Sims assumed *Page 226 
the risk. In other words, did he have knowledge of the existence of a dangerous condition with appreciation of such danger and he failed to exercise care for his own safety by putting himself in the way of danger. That is assumption of risk."
(Emphasis added.) After the trial court concluded its charge to the jury, Jerry Sims's counsel stated to the court:
 "I don't believe it was made clear to the jury that if they found that the defendant was guilty of wanton conduct, that contributory negligence and assumption of risk are not defenses to wanton conduct or willful conduct. I think one time the Court said if you find that he was guilty of simple negligence, then it would be. But the Court did not go further and say, however, if you find the defendant was guilty of willful or wanton conduct, that contributory negligence or assumption of risk are not defenses if you find that to be the fact."
The trial court responded, "Okay." Crates's counsel then stated:
 "[T]hat additional charge is not in the pattern charge. The pattern charge doesn't have that tacked on to it that it's not a defense. You clearly said that it's not a defense, excuse me, that if they find contributory negligence, that Mr. Sims could not recover for negligence. You clearly said that. It's a proper charge. . . ."
The trial court gave no further instructions to the jury.
The trial court correctly quoted from Instruction 30.02, AlabamaPattern Jury Instructions: Civil (2d ed. 1993), in instructing the jury that the plaintiff could not recover for "any initial simple negligence" of the defendant if the plaintiff was contributorily negligent. The "Notes on Use" that follow APJI 30.02, however, state:
 "If the plaintiff bases his entire . . . action upon the negligence of the defendant, the above charge may be used where one of the defenses is contributory negligence.
 "Where, however, the matter of willfulness or wantonness of the defendant is also submitted to the jury for [its] consideration, the following should be added to the above charge:
 "`Contributory negligence is a defense only as to actions based upon negligence. Contributory negligence is not a legal defense to the plaintiff's cause of action based upon (wantonness, willfulness or wantonness and willfulness).'"
(Emphasis added.) Although the language used in the APJI 30.02 "Notes on Use" is advisory, we find, in this instance, the suggested additional language to be sound and applicable. The trial court should have given the additional instruction because whether Crates's conduct was willful or wanton was an issue submitted to the jury. APJI 30.05, dealing with assumption of the risk, is described in the related Notes on Use as an instruction "used for [c]ontributory [n]egligence under certain conditions, [e.g.,] where there is a contractual relationship between the parties." This correlation between the pattern instructions on contributory negligence and those on assumption of the risk indicates that the additional charge in APJI 30.02 also should be given as to the defense of assumption of the risk in a case such as this, where the defendant's alleged willfulness or wantonness, along with the issue of negligence, is an issue submitted to the jury.
The trial court had the duty "to instruct the jurors fully and correctly on the applicable law of the case and to guide, direct, and assist them toward an intelligent understanding of the legal and factual *Page 227 
issues involved in their search for truth." American Cast Iron Pipe Co.v. Williams, 591 So.2d 854, 856 (Ala. 1991). A party is entitled to have the trial court properly instruct the jury regarding the issues presented in the case, and an incorrect or misleading charge may require a new trial. Towner v. Hosea O. Weaver Sons, 614 So.2d 1020, 1023 (Ala. 1993). Therefore, because Jerry Sims alleged not only that Crates acted negligently, but also that he acted willfully or wantonly, the trial court should have given the additional charge, as requested by Jerry Sims, in order to instruct the jury fully and correctly.
Furthermore, the trial court's error in not giving the jury the complete instruction set forth in APJI 30.02 and the related Notes on Use was not rendered harmless by the fact that the jury returned a general verdict. "Where the verdict is general, but prejudicial error obtains to the court's instructions to the jury on any theory of recovery, the verdict must be set aside because no determination can be made as to which of several issues the jury relied upon in reaching its verdict."Liberty Nat'l Life Ins. Co. v. Smith, 356 So.2d 646, 648 (Ala. 1978). See, also, American Cast Iron Pipe Co., 591 So.2d at 856.
Because the trial court's instructions to the jury were incomplete as to the defenses of contributory negligence and assumption of the risk, and because we cannot determine which issue the jury relied upon in reaching its verdict for Crates, we must reverse the judgment in favor of Crates and order a new trial on Jerry Sims's claims against him.
 IV.
We affirm the summary judgment entered in favor of Ilczyszin. We reverse the judgment entered on the jury verdict in favor of Crates, and we remand the cause for a new trial of the claims against that defendant.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Hooper, C.J., and Maddox, Cook, and Johnstone, JJ., concur.